GOURDAIN v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. April 16, 1907.)

No. 1,297.

1. POST OFFICE—USE OF MAILS TO DEFRAUD—INDICTMENT.

An indictment for using the mails to defraud, in violation of Rev. St. § 5480 [U. S. Comp. St. 1901, p. 3696], by subdividing a tract of land in Louisiana of small value into lots 10 or 20 feet square, and selling certificates, each purporting to give the holder an option to purchase an interest in a lot, upon false representations that the lots were within an oil district and very valuable, and that large cash offers had been made for certain of the same, construed, and *held* to charge a scheme and artifice to defraud within the meaning of the statute, which, when carried on by means of correspondence through the mails, constituted a violation thereof.

2. INDICTMENT—DUPLICITY.

Averments in an indictment that artifices used in furtherance of a scheme to defraud, to be carried on through the use of the mails, were intended to give one understanding of the scheme to one class of investors and another and different understanding to a different class, both being deceived and defrauded by the same artifices, do not make out two separate schemes so as to render the indictment bad for duplicity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, §§ 334-400.]

3. CRIMINAL LAW—TRIAL—INSTRUCTIONS—REQUESTS.

Where the charge of the court in a criminal case was correct and clear in the interpretation of the statute and the definition of the issues and the burden and measure of proof required to authorize conviction, without detailing or reviewing the evidence, the refusal of requests referring to and predicated upon different phases of the evidence was not error.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1958, 2005.]

4. SAME—MOTIONS FOR NEW TRIAL AND IN ARREST—REFUSAL TO HEAR ARGUMENT.

The overruling, instanter, of motions for new trial and in arrest of judgment in a criminal case, which raised only questions that were considered during the trial, and the refusal to hear argument or to grant an extension of time to prepare and file written motions and specifications, was not a refusal to consider such motions nor a denial to defendant of any right.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

The plaintiff in error, Louis A. Gourdain, was indicted, with one John H. Dalton, for violations of section 5480, Rev. St. (U. S. Comp. St. 1901, p. 3696), and upon joint trial both were convicted. This writ of error is prosecuted from the judgment thereupon against the first-named defendant. The indictment contains three counts, averring like schemes to defraud—that described under the first and second counts, stated as carried on under the name of "Louisiana State Loan & Trust Company of New Orleans, La.," and under the third count as "Louisiana Trust Banking Company." Each count is voluminous in description of the scheme and means, and the only substantial difference is in the letters alleged to be mailed in execution thereof, and in the location of lands and size of lots referred to under one and the other name.

The averments of the first count are summarized in the briefs for the plaintiff in error as serving for all questions raised, and such summary is adopted, in substance, for this statement, as follows:

The count charges that Gourdain and Dalton within the jurisdiction of the court had devised a scheme and artifice to defraud one Charles H. McClees

(with residence described) and a class of persons then resident within the United States not capable of being resolved into individuals and not capable by means of their great number and of want of information on the part of the grand jurors of being all named in the indictment; that is to say, such of the persons being desirous of purchasing tickets and chances in a lottery and tickets and chances in an enterprise similar to a lottery, and of investing small sums of money in gambling enterprises and in speculative enterprises and in oil lots and options on oil lots and interests in oil lots, as they, the said Gourdain and Dalton, should induce to purchase what they called "options" on lots and interests in the same, in the Wynn oil lots, situated in the parish of Wynn, in the state of Louisiana.

The scheme was a scheme and artifice to defraud the said persons so intended to be defrauded, by promoting and conducting a fraudulent enterprise under the name of the Louisiana State Loan & Trust Company of New Orleans, La., by purchasing a large tract of land in Louisiana (1,000 acres of little value, namely, $1.50 per acre), and platting the same into a large number of small lots 20 feet square under the name of "Wynn Oil Lands," and by offering for sale and selling to the persons so intended to be defrauded options on and whole interest in one of said lots for $20, and fractional interests at proportional prices, and by sending such persons certificates to evidence the sale of options which would purport on their faces to be merely certificates of such options, but which certificates in general appearance would so closely resemble ordinary lottery tickets, and would contain such indicia and earmarks of lottery tickets and of tickets in an enterprise similar to a lottery, that they would cause those persons familiar with lottery tickets who should see the certificates to believe that they were either lottery tickets or tickets in an enterprise similar to a lottery; so that such persons would be caused to believe that the reference to options on oil lots was a mere subterfuge to evade the law against lotteries and like enterprises; and by issuing and sending monthly to the same persons to whom the certificates would be sent lists which would purport on their face to be reports of prices which had been bid for lots, which would resemble ordinary lottery lists, commonly published and sent out by the promoters of regular lotteries; and by causing all of the literature sent out by the said Gourdain and Dalton in conducting such enterprise to resemble in general appearance ordinary lottery literature. By means of such resemblance and similarity of the certificates to regular lottery tickets and the similarity of lists to regular lottery lists and the similarity of literature to regular lottery literature, and by the further means of false representations and false pretenses to the effect that such enterprise was conducted in a fair, square, and honest manner, and had paid sums of money to some of its patrons, to cause said last-mentioned persons to believe that said lottery, or enterprise similar to a lottery, had fair, square, and honest drawings and paid large and capital prizes; whereas, in truth and in fact, the said enterprise was not intended by them and would not be either a lottery or an enterprise similar to a lottery which had fair, square, and honest drawings and paid large and capital prizes, and the said certificates were not intended to be and would not be lottery tickets in an honest and fair lottery, nor in an enterprise similar to a lottery having fair and honest drawings and paying large and capital prizes; but, on the contrary, it was intended by the said Gourdain and Dalton that the enterprise should not be either a lottery or an enterprise similar to a lottery which had honest and fair drawings and which paid large and capital prizes; and it was then intended that said enterprise should not have honest and fair drawings and should not pay large and capital prizes. And the grand jurors present that they do not know and cannot state the method and manner by which said Gourdain and Dalton intended to determine and did determine which of the said persons purchasing the said certificates should be paid small prizes; but the grand jurors say the said Gourdain and Dalton did intend to pay and did pay to some of the persons who should and did purchase said certificates small prizes, ranging from $5 to $50, and that the small prizes were intended to be paid and were paid as a bait to induce those persons to whom they were paid and others of the said last-mentioned persons to purchase the said certificates. And that as a part of the said scheme and artifice said

Gourdain and Dalton intended by the means aforesaid, that is to say, by causing those of the said persons intended to be defrauded, who were familiar with lotteries, etc., to believe that the said enterprise was either a lottery or an enterprise similar to a lottery, and that the certificates were either lottery tickets or tickets in an enterprise similar to a lottery, that had fair, square, and honest drawings and paid large and capital prizes, as aforesaid, and by paying small prizes, as aforesaid, to induce such last-mentioned persons, respectively, to purchase of them under the name aforesaid the said certificates, and to induce said last-mentioned persons to send and pay their moneys to the said Gourdain and Dalton under the said name of Louisiana State Loan & Trust Company. And that the said Gourdain and Dalton intended by this means to obtain possession of such money as should be so sent to them under the name aforesaid, or under any other name, for purchasing such certificates, and all or a part of the said money to convert to their own uses without rendering anything or service of value to said last-mentioned persons therefor, and thereby to defraud those said persons of the same. The exact part and amount of which said moneys they intended to convert to their own use are to the grand jurors unknown. And the said Gourdain and Dalton intended that a large majority of said persons who should purchase said certificates should receive nothing whatever of value in return for the moneys which they should pay for said certificates, and intended that what small amounts they should pay to such purchasers of said certificates as small prizes, as aforesaid, should be paid to said purchasers as a bait to induce them and other persons to purchase other of said certificates.

And the grand jurors further present that, as a part of said scheme and artifice to defraud, it was intended by said Gourdain and Dalton that said certificates, lists, and literature, so to be sent out by them, should cause the said persons intended to be defrauded to whom they were to be sent, who were not familiar with lotteries, lottery tickets and literature, to believe that the said enterprise, conducted under the name of the Louisiana State Loan & Trust Company, was an honest, fair, and legitimate enterprise for the sale of oil lots and options on the same. That for the purpose of causing the last-mentioned persons, so as aforesaid intended to be defrauded, to so believe as aforesaid, and for the further purpose of causing said last-mentioned persons to believe that large sums of money could be made by them, the said last-mentioned persons, by purchasing said options, they, the said Gourdain and Dalton, intended in the promoting and conducting of said enterprise to falsely represent and pretend to the last-named persons in effect that said lots were of great value, were located in an oil district, that oil had been discovered and found in that immediate district and locality; that large sums of money had been bid in good faith for numerous ones of said lots respectively, and numerous persons had ordered their respective interests owned by them in different ones of their said lots to be negotiated for large sums of money; that large sums of money had been made by different persons who had purchased options on said lots, and that there had been bid in good faith in cash prices for 1,194 of the lots mentioned an aggregate sum of $1,210,000, and prices for several lots mentioned, ranging from $300,000 a lot downward to $1,000.

And the grand jurors further present that, as said Gourdain and Dalton well knew, said lots were not of great value, nor located in a district where valuable oil had been found in paying quantities, and were not oil lots, nor situated in an oil plat, and no oil had been found in that immediate district, nor anywhere in that vicinity, and no large sums of money had been bid in good faith for any of said lots, and no person had ordered their respective interests negotiated for large sums of money, as they, the said Gourdain and Dalton, intended to falsely represent and pretend in effect, as aforesaid, to the said last-mentioned persons who were not familiar with lotteries, etc. And, as a part of said scheme and artifice, that the said Gourdian and Dalton, by means of said false representations and pretenses, intended to induce said last-mentioned persons who were not familiar with lotteries to purchase of them the said certificates and send and pay their money for the said certificates to said Gourdain and Dalton, under the name and style aforesaid; and that by this means they intended to obtain possession of such money to be sent and

paid to them under the name aforesaid, or under any other name, by the last-mentioned persons for purchasing said certificates and options, and all or a part of the said moneys to convert to their own uses without rendering any thing or service of value to the said last-mentioned persons therefor, and thereby to defraud those said persons of the same. The exact part and amount of which moneys which the said Gourdain and Dalton intended to convert to their own use, as aforesaid, are to the grand jurors unknown.

The said scheme and artifice to defraud was a scheme and artifice which they, the said Gourdain and Dalton, when so devising the same, and when committing the offenses mentioned, intended to effect and was to be effected by opening correspondence and communication by means of the post-office establishment of the United States, etc. And the grand jurors present that said Gourdain and Dalton, on April 5, 1905, so having devised the said scheme and artifice in and for executing the same and attempting so to do, and for defrauding by and through such scheme the said Charles M. McClees, who was one of the persons so intended to be defrauded, did place in the post office of the United States, at Chicago, etc., a letter which is described.

Other proceedings and facts upon which error is assigned are mentioned in the opinion in so far as deemed material.

W. Knox Haynes, for plaintiff in error.

Frank G. Hanchett, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit judges.

SEAMAN, Circuit Judge. The various errors assigned and pressed in the argument for reversal of the judgment against the plaintiff in error, Louis A. Gourdain, are reducible to these propositions: (1) That violation of the statute is neither charged by apt averments in the indictment, nor established by the evidence; (2) that the court erred in the denial of instructions requested on behalf of the plaintiff in error; and (3) that error was committed after verdict upon motions for new trial and in arrest of judgment. Consideration of the theory upon which each of the general propositions rests is deemed sufficient to solve the questions raised by the assignments respectively.

1. The sufficiency of the indictment was challenged, both by demurrer and by several subsequent motions; and, upon motion for direction of verdict in favor of the accused and motion for a new trial, the contention as well of insufficient proof was presented. The objections to the indictment are variously set out and reiterated in the arguments of counsel, from which we deduce, as their ultimate contentions: (a) that it is without distinct averments of the scheme and means for defrauding, stating "wherein the fraud consisted and the facts and circumstances by which it was to be accomplished;" (b) that there are no averments of intention to induce purchasers to believe that there were to be lottery drawings or prizes, or that they would participate in such drawings or prizes, nor averments that such drawings would not be had; (c) no averment of "facts constituting intended unfairness, dishonesty, or fraud in drawings;" (d) and no averments that "large sums of money could not be made by purchasing options," nor that the scheme "was not a fair and legitimate enterprise for the sale of options," nor that options offered "were not of value"; (e) that the averment that the method and manner of determining "the persons to whom the prizes (or the prices) were to be given," under the scheme, is unknown, renders the indictment bad; (f) that each count is void

for uncertainty and (g) for duplicity in stating two distinct schemes and means to defraud to operate on two separate classes of persons, with no overt act specified under either.

The scheme and means which are stated in the indictment and established by proof are undeniably artful, elaborate, and complex, so that the framing of charges thereupon was not free from difficulty; and the counts may well be open to the criticism of diffuseness, if not of indefiniteness in reference to the objects and methods of the proposed "drawings," either as the operators intended to carry them out, or as the various devices were calculated to be understood by customers. Nevertheless, the requirement is elementary that an indictment must fully and accurately describe an offense committed by the accused within the statute, and substantial failure in any of these essentials is a fatal objection at any stage. The statute (section 5480, Rev. St.) denounces as a crime the execution of a scheme or artifice to defraud "by means of the post-office establishment," and the test to be applied to the averments in this indictment is, whether they sufficiently describe and state a scheme to defraud, so intended and executed by the plaintiff in error—a scheme "to entrap the unwary, and to secure money from them on the faith of a scheme glittering and attractive in form, yet unreal and deceptive in fact, and known to him to be such." Durland v. United States, 161 U. S. 306, 312, 16 Sup. Ct. 508, 40 L. Ed. 709.

Their insufficiency to charge a scheme to defraud is contended upon the view, substantially, that the facts stated make out a mere lottery or gambling enterprise, with no deception of customers; and that no facts are stated of actual or intentional deception, so that none can "be supplied by implication." Consonant with that view, it is further stated in the brief for the plaintiff in error, in reference to the evidence, that it "shows conclusively that the enterprise was a gambling enterprise solely. That it was so understood by all persons who saw the literature or dealt with defendants, and that it was so intended to be understood by the operators. The gamble (so called) was carried on fairly and not fraudulently; that patrons were not misled or defrauded; that no intent existed to deceive patrons; that the form of the tickets, sheets, etc., was only to deceive or confound the officers of the law, and thereby evade the law against lotteries and other form of gambling." We are satisfied that these contentions of insufficient averments of fact in the several counts are without merit, and that facts constituting a fraudulent scheme, within the meaning of the statute, are stated and described in unmistakable terms, when each count is read as a whole. Conceding that unnecessary particularity and repetitions appear in the averments, each distinctly describes a scheme and means used to carry it out—the scheme intended to obtain money from the credulous and unwary, without substantial consideration in any sense, and no actual promise to return anything of substantial value, while the means are described to be intended and adapted as bait to attract one or the other class of persons mentioned, and to impose upon and deceive indiscriminately all who became investors—and the complete execution is set out. The scheme, as averred, was the ownership of purported oil-producing lands in Louisiana, subdivided in lots of 10 or 20 feet square—which lands

were neither oil-producing, nor in oil-producing districts, and were of little value, even in the aggregate—whereupon certificates were issued purporting for the sum paid therefor to give the option to purchase, for a further sum named, one twentieth or other named fractional interest in one of the lots. Money derived from sale of these certificates (as averred) was intended to be and was converted to the uses of the accused, "without rendering anything or service of value" to the purchaser. The scheme thus described was not a "lottery" or a "gambling enterprise," but plainly a fraud, and within the statute if means were used through the mails which deceived the purchasers and were so intended.

The means for executing the fraud and their purpose and effect are fully described. In the one phase, in reference to persons who are familiar with lottery and gambling schemes, the forms of certificates, of several lists of purported prices bid for lots, and of "successful investors," and other literature set out, are averred to so resemble those issued for lotteries that they were intended to be understood and were understood by such persons to represent lottery tickets in a lottery, or like enterprise "which had fair, square, and honest drawings, and paid large and capital prizes," but so disguised in form to evade legal restrictions; and such persons were thus attracted to become purchasers of the tickets or certificates offered. On the other hand, it is averred that persons not familiar with lotteries and the like, and not viewing the offer as one of lottery tickets and lists, were intended to be and were attracted and imposed upon by the offer as a speculation in oil-producing lots, with chances for great rise in value and ready sales. The averments, in substance, in reference to the first-mentioned phase, that the scheme and offer was not intended to be and was not a lottery or like enterprise "which had fair, square, and honest drawings and paid large and capital prizes," and that the tickets were not of that character or benefit, are sufficient, as we believe, to negative the assumed character of the scheme as a lottery or like enterprise, and of the offer as lottery tickets, by way of statement of the fact of falsity and of the fraud perpetrated, as designed, upon such purchasers. The derivation of the word "lottery" points out its general definition, as the "distribution of anything by lot," or "the drawing of lots"; and the scheme known as "lottery" is equally well defined, as one "for raising money by selling chances to share in a distribution of prizes," or a "scheme for the distribution of prizes by chance among persons purchasing tickets, the corresponding numbered slips, or lots representing prizes or blanks, being drawn from a wheel," etc. Century Dictionary. Lottery Case, 188 U. S. 321, 353, 23 Sup. Ct. 321, 47 L. Ed. 492. So if the scheme in question intended and gave no "fair, square and honest drawings" for prizes offered—and none other could be termed "drawings by lot" —it was not a lottery; the tickets issued are not lottery tickets, and the alleged deception of such purchasers is sufficienly stated without further description or attempt to give the artifice a name.

There are further averments in effect that it was intended, as a part of the scheme, to pay to some purchasers small sums or prizes, "ranging from $5 to $50," merely as a bait to induce further purchases, and such payments were made in some instances, but the method and manner

by which the accused "intended to determine and did determine which of the said" purchasers should be so paid as a bait was unknown and could not be stated. These averments are challenged as insufficient and uncertain. As above stated, the fact that the chances and methods of a lottery were not intended or given—that there was no determination by lot or fair chance in drawings—is sufficiently averred, as we believe; and these averments, if material are material only to show further artifices to entice purchasers. The fact of giving small prizes, by one-sided arbitrary selection among purchasers, to induce further custom, neither makes out a lottery scheme, nor tends to qualify the first-mentioned averments. The particular method of such one-sided choice may not be known or susceptible of adversary proof, but the fact that it is made arbitrarily (not by lot or chance) for the object averred may be provable circumstantially. However viewed, we are of opinion that the averments referred to do not affect the validity of the indictment.

The objections for indefiniteness and uncertainty of averments in reference to persons investing as a speculation offered in oil-producing lots or options therein are plainly untenable, as the facts of intentional deception and of worthless so-called "options" are stated with all needful particularity and certainty.

The contention of duplicity is thus stated in the brief for the plaintiff in error: That each count presents "two separate and distinct schemes to defraud," and separate "means of accomplishment," each scheme "to operate upon and defraud a separate and distinct class of people." Confusion of cause and effect is apparent in these propositions when the allegations are read as an entirety in each count. The scheme to defraud is described as single—to entice money from the credulous, whether of one or the other class of "speculators" referred to, with a single line of means or artifices adapted to appeal to the inclinations of either class, and one and the other thus enticed was equally deceived, as either understood the scheme from his point of view. Both purpose of the accused, and means for its accomplishment in either instance, were identical, and all who accepted the offer were alike defrauded of their money. The allegations in each count respecting the artifices that they were designed to give one understanding of the scheme to one class and another understanding to the other, so that neither was given the true meaning and each was deceived and defrauded by the same artifices, do not make out two separate schemes to defraud, but a single scheme calculated to entice in either view; and error is not well assigned for duplicity. We are of opinion that each count is sufficient to charge the plaintiff in error with violation of section 5480; and the contentions that the evidence is insufficient to support conviction are, as we believe, alike without merit. Comment upon the proof is unnecessary, beyond the remark that it impresses us to be consonant with the averments of an elaborate and subtle scheme to defraud, executed by the plaintiff in error, and adequate in all particulars for submission to the jury thereunder. The motion on behalf of the plaintiff in error for direction of a verdict of acquittal was rightly overruled.

2. Error is assigned upon portions of the instructions given to the jury, and for refusal to give sundry instructions requested on behalf of the plaintiff in error. In reference to the instructions which were given

no exceptions were taken and no reviewable question arises. Those which were requested and denied were 14 in number and voluminous in various definitions of the offenses charged, references to phases of the testimony with inferences to be drawn therefrom as to the nature or intent of the scheme, and directions to consider the evidence upon theories thus stated. Without extending this opinion to their review in detail, or to comment upon the correctness or incorrectness of various propositions or inferences embodied in one or the other, we deem it sufficient to state our conclusion that no error was committed in the denial of either requested instruction, upon the following premises: That the instructions which were submitted to the jury were correct and clear in the interpretation of the statute and definition of the elements and issues to be established by proof beyond reasonable doubt to authorize conviction; that, in so far as either requested instruction stated correctly propositions of law to be observed by the jury in considering the evidence, such rule was plainly and sufficiently embodied in the charge of the court; that the evidence was not detailed or reviewed by the court, but was submitted for determination by the jury, under the issues as defined, without comment upon its force or direction as to inferences of fact; that the course so adopted by the court was rightly adhered to, without following either the form or the matter of the requested instructions, when the rules of law applicable to the issues were fully stated; and that the accused was not entitled (Coffin v. United States, 162 U. S. 664, 674, 16 Sup. Ct. 943, 40 L. Ed. 1109) to the requested instructions upon the evidence referred to and inferences of fact thereupon.

3. The complaint that the court "refused to consider the motion for a new trial and the motion in arrest of judgment" remains to be considered. The right of the accused is unquestionable to have both of these motions entertained and to a ruling upon each by the court; and it is settled that denial of such right may constitute reversible error, although the motion for a new trial is addressed to the discretion of the court, and when that discretion is exercised the action thereupon is not reviewable. Clyde Mattox v. United States, 146 U. S. 140, 147, 151; 13 Sup. Ct. 50, 36 L. Ed. 917; Ogden v. United States, 112 Fed. 523, 526, 50 C. C. A. 380; Felton v. Spiro, 78 Fed. 576, 581, 24 C. C. A. 324. In this record, however, it appears that leave was granted to make and file both motions, and that each was overruled instanter, without hearing arguments or specifications of grounds. The contention is that such action infringed the rule referred to—was in effect a refusal to exercise the discretion of the court upon the motion for a new trial— and under the above-mentioned authorities cause for reversal, without reference to the merits of either motion. So, while no proposition was raised, under either motion thus overruled, which had not received careful consideration in the course of the trial—as remarked by the trial court in overruling the motion—reversal is sought upon the ground alone of denial by the court of further time to present and reargue such propositions. We are of opinion that the record establishes no violation of the wholesome rule upheld in the authorities cited, as the motion for a new trial appears to have been entered on behalf of the accused, upon suggestion and leave of the court, "to protect any rights

he may have," and was thereupon overruled, with an exception entered to such ruling by direction of the court. Subsequently, leave was given the accused to "file a written motion for a new trial with specifications of grounds," on the following day, as of the day of hearing; and the bill of exceptions states that the accused excepted to a "ruling of the court in refusing to permit" him to state the grounds for such motion, and "in refusing to consider said grounds," and for "refusing to hear argument on behalf" of the accused in support thereof. The record further states that the accused "moved the court that the judgment be arrested" and asked time to prepare written motion and specifications, but was refused such extension of time, and the court "also declined to hear argument in support of the motion."

This refusal of the trial court to grant time and hear further arguments upon questions which had been argued and considered throughout the trial appears to be the sole ground of complaint. Upon motion for a new trial, neither stay of proceedings nor extent of deliberation is prescribed by rule or authorities, and the course in each case necessarily rests in the exercise of judicial discretion under the circumstances presented. With no suggestion of cause arising after the case was submitted to the jury (as in Clyde Mattox v. United States, supra, and Ogden v. United States, supra), or of newly discovered evidence, and offer only to "show variance between the allegations in the indictment and the proof as presented"—appearing in the record on like prior motion on behalf of Dalton—error is not well assigned for mere denial of stay and rehearing upon such motion. The only question tendered for argument was raised and considered upon the trial. Such prior consideration was applicable as well to the motion, and presumptively was so applied by the court in overruling the motion—a ruling upon the merits, and not a refusal to entertain the motion without consideration.

As no reversible error appears, the judgment of the District Court is affirmed.