## HIBBARD v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. March 18, 1909. On Rehearing, May 28, 1909.)

No. 1,481.

1. POST OFFICE (§ 48*)—USE OF MAILS TO DEFRAUD—INDICTMENT.
   An indictment, under Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), for using the mails to defraud, held sufficient.

   [Ed. Note.—For other cases, see Post Office, Dec. Dig. § 48.*]

2. CRIMINAL LAW (§ 363*)—EVIDENCE—DOCUMENTARY EVIDENCE.
   On the trial of a defendant, charged with having devised a scheme to defraud, which was carried out by the use of the mails, consisting of advertising by letters and circulars as a medical institute and defrauding persons secured thereby for treatment, where the government introduced witnesses, who had answered such advertisements and who testified as

to the transactions between them and defendant, the file wrappers in defendant's office, containing the correspondence between him and every patient secured for treatment, were admissible in his behalf as part of the res gestæ, showing the real nature of the business done by him.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 805-810; Dec. Dig. § 363.*]

**3. CRIMINAL LAW (§ 656*)—TRIAL—REMARKS OF JUDGE.**

On the trial of a criminal case in a federal court, it was error for the court to comment on the failure of defendant to produce certain letters, which witnesses had testified were written to him, as in derogation of his constitutional right not to furnish evidence against himself.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1524-1533; Dec. Dig. § 656.*]

**4. POST OFFICE (§ 50*)—PROSECUTION FOR USING MAILS TO DEFRAUD—INSTRUCTIONS.**

Under Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696), making it a crime to devise a scheme to defraud, to be carried out, and which is, or is attempted to be, carried out, by the use of the mails, the intent to defraud is an essential element of the offense, to be determined by the jury as a question of fact from all of the evidence; and an instruction in such a case that "the law presumes that every man intends the natural, legitimate, and necessary consequences of his acts," is erroneous, as tending to mislead the jury into the supposition that, if the scheme in its operation resulted in defrauding persons, the law raises a conclusive presumption of an intent to defraud.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 50.*

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

The plaintiff in error was tried and convicted under each of three counts in an indictment alleging violations of section 5480, Rev. St., as amended (3 U. S. Comp. St. 1901, p. 3696), in reference to fraudulent use of the post office establishment; and this writ of error is brought for review of the judgment. The indictment alleges that the plaintiff in error, under the name of the Boston Medical Institute, "devised a scheme and artifice to defraud" persons named "and a class of persons afflicted" with various sexual (genito-urinary), diseases mentioned, by false representations (specified at length), which include a medical staff of eminent physicians and specialists to consider each case submitted; assurance that compliance with directions would restore the patient to perfect health; that cure was positively guaranteed for every case undertaken by the Institute, or all money paid would be refunded to the patient; that the Institute was "the oldest medical institute in the country," with the "most extensive laboratory in the country," and its high standing "was acknowledged by the medical profession generally." It specifies the negative of each representation so made, and then avers that the plaintiff in error intended thereby to induce and procure the sending of money to him by the "persons so intended to be defrauded" and to convert such money to his own use, "without rendering medical service of any value, or any service of value, therefor," and that the scheme was to be effected by inciting such persons to open communication with the plaintiff in error, under the name referred to, by means of the post office establishment, and to carry the scheme out through such means. Each count then sets out a particular communication which was sent by the plaintiff in error (as alleged) by placing or causing it to be placed in the post office at Chicago, addressed to the person named. The nature of the testimony and of the errors assigned sufficiently appears in the opinion.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Benjamin C. Bachrach, for plaintiff in error.

Edwin W. Sims, U. S. Atty., Francis G. Hanchett, and Seward S. Shirer, for the United States.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). This writ of error is predicated on a formidable assignment of errors (extending over 98 pages of the printed record); but we believe the propositions embraced therein, which require discussion for the purposes of review, may be simplified under a few heads, and we are impressed with no difficulty in the solution of either under well-settled doctrines of the criminal law. Thus grouped, the contentions are: (1) That the indictment is insufficient; (2) that no offense was proven; and that the trial court erred (3) in rulings upon the reception and rejection of testimony, (4) in remarks thereupon during the course of the trial, and (5) in instructing the jury.

1. Objections to the indictment as insufficient were raised by demurrer, and again on motion in arrest of judgment. Its statement of representations entering into the alleged fraudulent scheme is diffuse —containing matters not deemed essential, with negative thereof not well stated—and the scheme is not (as counsel for the government frankly conceded on the argument) concisely described, nor in the direct terms which would seem apt for the purpose. We are of opinion, however, that the nature of the scheme which was devised (as the indictment charges) to defraud persons of the class described, and the means devised and used to that end in representations (specified) which were false in fact, together with the execution of such fraudulent scheme through use of the mails, are definitely and completely averred and described. Moreover, the indictment unmistakably avers the ultimate facts upon which evidence was introduced at the trial, in support of the counts, respectively, so that the objection for insufficiency is untenable, unless the evidence thus appearing fails to establish a prima facie case within the statute; and it remains for consideration under that contention.

2. The proof is undisputed that the plaintiff in error, who was not a physician, operated in Chicago, under the name of "Boston Medical Institute" (incorporated), an establishment which carried on an extensive business in correspondence with patrons in various states for treatment of alleged sexual diseases, having a considerable force of clerks and helpers and a physician as "medical superintendent"; that pamphlets and other printed matter, calculated to arouse the fear of boys and young men over symptoms described, and induce correspondence with the "Institute" for treatment, with application blanks for such purpose, were widely distributed to reach that class of persons, especially in country districts; that many were so induced to send money for instructions in treatment of symptoms described by them and for supplies of (so-called) remedies; and that such printed matter contained the representations averred in the indictment, which were untrue in material inducements (as averred) and plainly ended to deceive young and unwary readers, to excite their alarm

and direct their patronage to the "Institute" for treatment, under the promises then made of complete cure or return of money sent. Details of the general scheme thus appearing in evidence do not require specification, beyond remark that stock forms of advice and need for treatment (printed in imitation of typewritten letters) and stock supplies of medicine were usually sent such applicant, and use of the mails was intended and adopted for all the transactions.

On the part of the prosecution the testimony of medical experts tends to prove that the most noticeable so-called "symptoms" mentioned in these publications, as signals of disease and serious danger from causes referred to, are of well-known frequency among the class of young persons thus addressed, and do not ordinarily indicate disease, nor need of treatment, nor dire results thus stated; that such persons are readily impressed with fear and the usual nervous effects, which are not only harmful in themselves, but conduce to the patronage sought; that no such course of medical treatment as appears in evidence was either needful or helpful to these applicants; and that serious injury in nervous conditions resulting from such course was not only probable, but appeared in fact in instant cases. Witnesses were also called from various states, appearing as young men of the class described in the indictment, who testified in reference to execution of the scheme, and stated facts which do not require mention beyond a remark that they tend to support the opinion evidence above summarized. We believe, therefore, that the testimony authorized submission of the issues to the jury under each count, and that the various objections to the indictment were rightly overruled.

3. Whatever the force of this testimony as viewed by the trial court, the issues of fact were for the jury to determine, within the established rules of law, after hearing all admissible evidence offered by way of defense. With or without dispute upon the plan and means of operation as conducted under the name of "Boston Medical Institute," the crucial inquiry remained for answer by the jury whether the evidence established beyond reasonable doubt that a scheme to defraud within the meaning of the statute was devised therein and intentionally carried out as such by the plaintiff in error. By way of defense to the case thus presented, it was the indisputable right of the accused to introduce evidence which tends in any degree to prove the true nature and purpose of the alleged scheme, or his intent in its execution, and have such evidence heard and submitted to the jury for consideration. We are of opinion that the well-settled rules of the law for preservation of the right referred to were not observed in the trial of the plaintiff in error, and that the judgment must be reversed for errors well assigned upon rulings of the court, whereby admissible evidence thus tendered on his behalf was excluded. While complaints of error for this cause are numerous, the following exemplifications and statement of the rule to be applied are deemed sufficient for correction upon a new trial:

(1) Seven witnesses were introduced on the part of the government as patrons of the Institute, and their testimony in reference to their respective cases and transactions was mainly relied upon for support of the charge of fraud in the scheme and its execution. For

the defense, Dr. Edmondson, medical director of the Institute, was one of the chief witnesses. After stating his qualifications and experience, this witness testified as to the purposes of the business and its methods of advising and treating patients through correspondence and supply of medicine, and that records of all applications and correspondence were kept in each case in a file wrapper, containing the original papers received from patients and carbon copies of letters and instructions sent by the Institute, all under supervision of the witness. In the course of such testimony, one of these file wrappers was identified by him and offered in evidence. Counsel for the government raised objection that it was "hearsay and incompetent without having the witness [patient] here to cross-examine"; and such counsel further stated, in answer to an inquiry by the court whether it would then be competent, that he thought it would not, but that it was clearly inadmissible upon the ground first stated. The offer was explained by counsel for the accused as intended to show the course of treatment and business in such cases, and "take it up seriatim with each patient treated," to disprove the charges of fraud in the scheme as executed. It was, nevertheless, excluded by the court; and upon like tenders of "13 large cases" of these file wrappers, alleged to contain the entire record of the business, objections were sustained, and all such testimony disallowed. Moreover, the court expressly stated in these rulings (in effect) that the proof by way of defense must be limited to the cases of treatment in evidence on the part of the government, and that other instances were inadmissible.

These rulings were erroneous and prejudicial, as we believe, whether the evidence was ultimately excluded upon one or the other theory above mentioned. The elementary rule in reference to hearsay testimony, cited in support thereof, is inapplicable to either of the tenders of file wrapper contents. While it is true that the applications and correspondence thus appearing are incompetent to prove that facts existed as therein stated, they were expressly produced and offered for another purpose, well recognized for their admissibility under the rules of evidence. In connection with the testimony of the witness Edmondson, the initial exhibits were admissible (as offered) by way of illustration; and the subsequent tender of the 13 cases, alleged to contain the record of the entire course of business, became admissible as original evidence of the nature of res gestæ. With a fraudulent scheme charged, these records (as described) were competent, as circumstances in the course of the business which may tend to prove its real nature as carried on. In so far as such circumstances are fairly contemporaneous with the proofs offered to establish fraudulent device and execution, the doctrine is elementary that they constitute parts of the res gestæ "and may always be shown to the jury, along with the principal fact." 1 Greenleaf on Evidence (15th Ed.) § 108. So the numerous authorities called to attention in the supplemental brief submitted by counsel for the government—with Lemon v. United States, 164 Fed. 953, 958, 90 C. C. A. 617, as the leading citation—are distinguishable as mere exemplifications of the general rule as to hearsay evidence, and do not affect the exception above stated. The files, therefore, were competent evidence for the pur-

pose stated, subject to proper limitation of their reception within the business and period embraced in the charge and under proper instructions to the jury for their consideration as above mentioned.

In reference to the further theory which appears to have been entertained for excluding the testimony thus offered by way of defense —namely, that instances of treatment by the Institute other than those in evidence on the part of the government were inadmissible—we deem it sufficient to remark that proof, direct or circumstantial, which tends to show either the true nature of the business or the intention of the accused in carrying it on is admissible under this charge, and the restriction thus imposed or stated by the trial court was erroneous.

(2) Evidence was likewise excluded, which was offered for defense in connection with the testimony of Dr. Edmondson, consisting of correspondence on file tending to support his testimony, in denial of the averment in the indictment that "cases of hydrocele" were treated by the Institute. This line of correspondence was offered as occurring in the course of the business in numerous instances, and was admissible, as we believe, within the rule above stated. The contention of counsel for the government that the error was harmless, if the correspondence was admissible, for the reason that the witness was permitted to state the fact of refusal to treat such cases, cannot be upheld.

4. Error is assigned for another cause, in the course of the introduction of the testimony, which requires mention. It relates to remarks made by the court, to counsel for the accused, while cross-examining a witness for the prosecution, who had testified, without objection, to the contents of letters sent by the witness to the Institute (as stated) which intimated, to say the least, that counsel should produce the letters referred to. We deem it sufficient to state that comments upon the nonproduction of such letters were repeated, over objection stated, which were in derogation of the constitutional right of the accused to furnish no evidence in aid of the prosecution, and were presumptively prejudicial in the inference thus left in the minds of the jurors when the letters were not brought in, so that error is well assigned thereupon. McKnight v. United States, 115 Fed. 972, 981, 54 C. C. A. 358, and cases cited.

5. Numerous errors are assigned upon the instructions submitted to the jury and various requests on behalf of the accused which were refused. On examination of the charge as an entirety, however, we believe the only question of reversible error arises under one of the assignments, and that the others will not require discussion in the light of our opinion expressed thereupon. The alleged error referred to is the giving of this instruction:

"The law presumes that every man intends the natural, legitimate and necessary consequences of his acts. Wrongful acts, knowingly or intentionally committed, can neither be justified nor excused on the ground of innocent intent. The color of the acts determines the complexion of the intent. The intent to injure or defraud may be presumed upon an unlawful act which results in loss or injury, if proved to have been knowingly committed."

The general rule of presumption, thus referred to, is stated in 1 Greenleaf on Evidence, § 18, in these terms:

"A sane man is conclusively presumed to contemplate the natural and probable consequences of his own acts."

Of course, no such rule is applicable to the case at bar; and it appears from other instructions, submitting the issue of intent to determination by the jury from all the evidence, that the court intended no such conclusive effect to be understood from the above-mentioned instruction. Nevertheless, the unqualified terms so stated, as a presumption of law, are erroneous, and their liability to mislead the jury is undoubted, irrespective of the contention on behalf of the plaintiff in error that no presumption of specific intent to defraud—which is the statutory offense charged in the indictment—arises from the fact that fraud may appear to be the natural consequence of the act committed. The distinction between presumptions of law and mere inferences of fact is not observed in this instruction; and, assuming it to intend a disputable presumption of law (1 Greenleaf on Ev. § 33), its effect must be to cast the burden upon the accused to disprove fraudulent intent, which is unauthorized. McKnight v. United States, 115 Fed. 972, 974, 54 C. C. A. 358, and authorities cited. So neither class of presumptions of law—the one conclusive and the other disputable—is applicable to the issue of specific intent to defraud presented under the indictment. The statute (section 5480) prescribes as the offense devising and executing a scheme with intent to defraud. While the fraudulent character of the scheme, as executed, is necessarily charged and must be established by proof, conviction cannot rest on the fact that the scheme is fraudulent in its operation, for commission of the statutory offense requires specific intent on the part of the accused to defraud the patrons of the Institute. Durland v. United States, 161 U. S. 306, 313, 16 Sup. Ct. 508, 40 L. Ed. 709. In other words, however fraudulent in tendency or fact the scheme may appear to be, neither the scheme nor its execution is punishable under the statute, unless the evidence, direct or circumstantial, establishes as well (and beyond reasonable doubt) the essential ultimate fact charged as the violation—that it was devised and carried out by the accused with intent to defraud the patrons of the Institute, as described in the indictment. Proof of the nature of the scheme and its effects upon the patrons constitutes circumstantial evidence, together with the facts appearing in its execution, from which the intent of the accused in such execution may legitimately be inferred, in the light of all circumstances bearing upon that crucial issue. The accused, however, is entitled to the benefits of the presumption of innocence and good faith, created by the law in his favor, and to have the jury instructed accordingly, in terms which involve no doubt of their meaning, so that the question of intent is thus presented, as an issue of fact alone, upon which the accused must be acquitted, unless both presumption of good faith and evidence introduced in his favor are overborne by direct and circumstantial proof, establishing beyond reasonable doubt his intent to defraud the patrons by the efforts and means employed in use of the mails.

Although the cardinal rules (a) that innocence must be presumed and (b) that intent to defraud must be proven beyond reasonable doubt are repeatedly stated in the instructions, we are of opinion that

the above-mentioned instruction as to intent presumed by law was erroneous and confusing upon that issue, and not cured (as counsel for the government contends) by the other instructions referred to. The intent may rightly be inferred from the circumstances in evidence; but it is an inference of fact—not a presumption of law.

The judgment of the District Court is reversed, therefore, and the cause remanded, with direction to grant a new trial.

## On Rehearing.

PER CURIAM. The petition for rehearing is denied. We do not wish, however, that there should be any misunderstanding respecting our holding on the instruction referred to in subdivision 5 of the opinion. Standing by itself, as an abstract proposition of law, the instruction is not erroneous. The error consists in applying it to a case wherein, apart from the intent, the act is colorless; color being thereby imparted, not to the intent by the color of the act, as the law implies, but to the act itself by the color borrowed for the intent. In cases like this where the act itself is, apart from the intent, colorless, the color of the intent must be proven as any other element of criminality is proven. The instruction as given (bearing in mind the case to which it was applied), though correct as an abstract proposition of law, tended to confuse the jury upon what, in this case, was the burden on the government, and thereby, in our judgment, prejudiced the plaintiff in error.