## HANISH v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

No. 2071.

1. CRIMINAL LAW ☞1166½—HARMLESS ERROR—NOTICE TO PRODUCE DOCUMENTS—READING TO JURY.

While a notice to defendant to produce documents constituting a link in the chain of evidence against him has no proper place in correct criminal procedure, and is unnecessary for introduction of secondary evidence of their contents, yet, there being nothing incriminating in the documents, and the fact of the copies thereof introduced being true copies being established by independent evidence, and the offense being fully proved, the reading to the jury of the notice to produce was not a substantive invasion of defendant's constitutional right not to be compelled to testify against himself, but nonprejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3114-3123; Dec. Dig. ☞1166½.]

2. CRIMINAL LAW ☞37—ENTRAPMENT—OBSCENE BOOKS—DECOY LETTERS.

The gist of the offense of sending obscene books by interstate express still remains, though sent on decoy letters of a government inspector.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 42; Dec. Dig. ☞37.

Entrapment as defense to criminal prosecution, see note to Woo Wai v. United States, 137 C. C. A. 609.]

3. CRIMINAL LAW ☞1172—INSTRUCTIONS—FAILURE OF ACCUSED TO TESTIFY.

Instructing that the fact that defendant did not testify is not to be considered against him is not a prejudicial comment on the fact of his not testifying.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3128, 3154-3157, 3159-3163, 3169; Dec. Dig. ☞1172.]

4. OBSCENITY ☞7—OBSCENE BOOKS—BILLING TO FICTITIOUS NAME.

The character of the transaction as commerce, where defendant sold an obscene book and sent it by interstate express, billed to a person of the name given him by the buyer, is not affected by the name being fictitious.

[Ed. Note.—For other cases, see Obscenity, Cent. Dig. § 7; Dec. Dig. ☞7.]

5. OBSCENITY ☞11—OBSCENE BOOKS—INDICTMENT—FICTITIOUS NAME.

It is not one of the particulars necessary to be alleged in an indictment for sending an obscene book by interstate express that the name of the person to whom, as directed, it was billed, was fictitious.

[Ed. Note.—For other cases, see Obscenity, Cent. Dig. § 10; Dec. Dig. ☞11.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. CRIMINAL LAW &#8618;446—EVIDENCE—REPORTS OF INTERSTATE COMMERCE COMMISSION.

    The provision of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 16, 21 Stat. 384, as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 [U. S. Comp. St. Supp. 1911, p. 1303]), making reports of the Interstate Commerce Commission prima facie evidence of all facts stated in them, "for the purpose of investigations by the Commission and in all judicial proceedings," is not limited to proceedings before the Commission, which are only quasi judicial.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1032; Dec. Dig. &#8618;446.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Julian W. Mack, Judge.

Otoman Zar Adusht Hanish was convicted, and brings error. Affirmed.

    Defendant was convicted on three counts of sending by express from Chicago to Brookfield, Mo., on February 24, 1912, an obscene book, directed to Miss J. B. Gardner, and on three other counts of sending by express the same book March 22, 1909, to Julia B. Gardner, at the same place. There is no such person as Miss J. B. Gardner or Julia B. Gardner. The shipments were made pursuant to decoy letters sent to the defendant by a government inspector, purporting to be written by Miss Gardner.

    Many objections were made, and exceptions taken, which have been preserved in assignments of error. Those chiefly important are considered in the opinion.

James R. Ward, of Chicago, Ill., for plaintiff in error.

Charles F. Clyne and Joseph B. Fleming, both of Chicago, Ill., for the United States.

Before BAKER and KOHLSAAT, Circuit Judges, and SANBORN, District Judge.

SANBORN, District Judge (after stating the facts as above). [1] Strenuous objection was made to the reading in the presence of the jury of a notice to defendant's attorney by the district attorney to produce the decoy letters. Two of these letters purported to be written by Miss Gardner to the defendant, and one letter in reply signed by defendant. The letters purporting to be written by Miss Gardner ordered copies of the obscene book, "Inner Studies," and a magazine called "Mazdaznan," and the third one, signed by defendant, stated that the book had been sent by express, and that the magazine would be mailed every month. There was nothing incriminating in the letters, but they were material evidence to connect defendant with the two shipments of the book by express. The copies were read in evidence.

The notice to produce was entirely unnecessary, because defendant could not be compelled to produce any document constituting a link in the chain of evidence against him. By correct criminal procedure the notice should never have been given. Such a notice has no place therein. Much less should it have been read in the jury's presence. McKnight v. United States, 122 Fed. 926, 61 C. C. A. 112 (Lurton, C. J.).

But whether what was done was prejudicial is a wholly different question. The notice was not the sole evidence that the copies of the letters put in evidence were true copies, that fact being established by independent testimony. Without any notice to produce the letters were accordingly admissible. Had the letters been incriminating on their face, as in the McKnight Case (on another appeal, 115 Fed. 972, 54 C. C. A. 358, where the document was "highly incriminating"), the situation might be different. Defendant was not ordered to produce the original letters by the trial judge, nor even requested so to do. Under such circumstances he was in no manner prejudiced by the reading of the notice. His constitutional rights should be carefully guarded by the court, but not to the limit of pure sentimentalism.

Hibbard v. United States, 172 Fed. 66, 71, 96 C. C. A. 554 (in this court), is also distinguishable, because the trial court repeatedly commented upon the nonproduction of the documents there in question, thus carrying to the jury a prejudicial implication. While it is possible that the jury may have felt that defendant feared either to produce the letters or to withhold them, and thus he was compelled in some sense to be a witness against himself, yet in a case like this, where the fact of the interstate shipment by the defendant is fully proved, the character of the literature is satisfactorily shown, and copies of the letters appear, it is very unlikely that the reading of the notice to produce could have been prejudicial.

[2] Another assignment of error raises the question whether the fact that the alleged offenses were committed at the instance of government officials, through decoy letters asking that the obscene book be sent to a fictitious person, excuses the offender. The system of detecting crime by the use of decoy letters, or decoy witnesses, is necessary to the proper administration of criminal justice, and is in quite general use. It does not of itself excuse the offender, unless a constituent element of the crime be thereby removed. In cases of larceny, if the owner of the property, through a decoy, consents to the taking of the property by the accused, the element of trespass or tortious taking, essential to the offense of larceny, is absent, as explained in Love v. People, 160 Ill. 501, 43 N. E. 710, 32 L. R. A. 139, and Topolewski v. State, 130 Wis. 244, 253, 109 N. W. 1037, 7 L. R. A. (N. S.) 756, 118 Am. St. Rep. 1019, 10 Ann. Cas. 627. In the case at bar, however, although defendant sent the books pursuant to the decoy letters, and sent them to a fictitious person, yet the gist of the offense still remained, which was the abuse of interstate commerce facilities to carry his obscene books. "The law was actually violated by the defendant." Grimm v. United States, 156 U. S. 604, 611, 15 Sup. Ct. 470, 39 L. Ed. 550; Rosen v. United States, 161 U. S. 29, 42, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Goode v. United States, 159 U. S. 663, 16 Sup. Ct. 136, 40 L. Ed. 297.

[3] Another alleged error was the comment of the trial judge upon the fact that defendant did not testify. On this subject the court said:

"You are not, however, to take into consideration at all as against the defendant the fact that he did not testify. The law gives him an absolute privilege to testify or not to testify, as he deems best. If he goes on the witness stand and testifies, then he is like any other witness. If he does not come on

the witness stand and testify, that is not in any sense to be taken against him. He is exercising only the absolute right which is given to him by the law. I do not mean by that to say that if he does not testify it is to be presumed that if he had testified he would have contradicted some other witness. There is no presumption one way or the other. I merely mean to say that his not testifying is not in a thought to be taken against him.

"Now, there is very little that is contradictory in the case. There is perhaps a question as to whether this defendant, or Maurice Clements, used the word 'obscene,' during this conversation at the Temple. The government says that it was used; that the reason assigned by the defendant for sending the book by express was that, if he sent it by mail, it would make him liable to punishment for its obscenity. The witness Maurice Clements says that he did not use the word 'obscene,' and that he did not hear it used. It is for you to determine as between the witnesses who is telling the truth."

This instruction was evidently for the purpose of cautioning the jury not to make any inference against the defendant as they otherwise might have done. It was carefully guarded, and should receive the approval of the court. In any event, it could work no injury. On objection being made, the trial judge said it was done in defendant's interest, as we think it was.

[4, 5] It is contended by defendant that the shipment of the books was not interstate commerce, because they were sent by defendant in Chicago, through Missouri, and back to a government inspector in Chicago, billed to a nonexistent person in Missouri, received there by the sender's agent, and then shipped to him; also, that there was no sale of the books, which is claimed to be essential to make the transaction commerce. Along the same line it is claimed that the facts just recited should have appeared in the indictment, and the defendant was therefore not fully informed of "the nature and cause of the accusation against him." In other words, the contention is that the fictitious element in the transaction makes it transportation only, not commerce, and that, even if it were commerce, the real facts must appear in the indictment.

As to the first point, it is enough to say that the books were sold by defendant to the inspector, and fully paid for. They were delivered by defendant to a common carrier, actually carried from Illinois to Missouri, and there delivered to a person designated to receive them, who sent them by another shipment to the inspector in Illinois. The mere fact that they were billed to a fictitious person in no way affects the character of the transaction as commerce. It was a clear case of intercourse between defendant and the person in Missouri who actually received the books.

For like reasons the additional fact that there was no such person as Julia Gardner was immaterial, need not have been proved, and was not one of the "particulars" necessary to be stated by the rule of United States v. Cruikshank, 92 U. S. 542, 558, 23 L. Ed. 588. The statement of the offense was complete without disclosing this additional element. The transaction was, in effect, the sending of property sold, by a citizen of one state to a citizen of another, and it is entirely immaterial that the latter was made to use an assumed name.

[6] The books were delivered by defendant to the United States Express Company and by it turned over to the Adams Express Company

at Chicago, and were carried by the latter to Brookfield, Mo. Some of the counts charge the delivery of the books to the United States Company, a joint-stock association existing under the laws of New York, for carriage from Chicago to Brookfield. Others charge delivery to the United States Company, organized as aforesaid, being under a common arrangement with the Adams Company, a like joint-stock association, for carriage from Chicago to Brookfield. No proof was offered of the character of the organization of these two express companies, except certified copies of parts of the report of the Interstate Commerce Commission, showing that each of these bodies had reported to it that it was an unincorporated company under the common law of New York. It is provided by the Commerce Act that such reports shall be preserved as public records in the custody of the secretary of the Commission, and shall be prima facie evidence of the facts stated therein "for the purpose of investigation by the Commission *and in all judicial proceedings.*" U. S. Comp. Stats. (1911 Supp.) 1303. There is nothing in the statute to show that this language is limited to proceedings before the Commission. That body is not a court, and proceedings before it are not strictly judicial, but only quasi judicial—partly administrative and partly judicial. That "all judicial proceedings" should be construed as without exception, see City of Superior v. Norton, 63 Fed. 357, 12 C. C. A. 469 (in this court).

The jury found the book "Inner Studies" to be obscene, and the question was fully and properly submitted to them by the trial judge. The language employed therein, particularly in chapter 12, amply justifies such finding.

Some other assignments of lesser importance are discussed in the briefs, but were not pressed in argument. They have, however, been fully considered, but are not of sufficient moment to merit further discussion.

The judgment is affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes