## HAIR et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. February 6, 1917.)

No. 2281.

1. POST OFFICE ☞49—OFFENSES—SCHEMES TO DEFRAUD—EVIDENCE—ADMISSIBILITY.

An indictment charging defendants with using the mails in the execution of an alleged scheme and artifice to defraud, after alleging their establishment of agencies for the sale of fire extinguishers, averred the falsity of defendants' representations that the fire extinguisher tubes were worth the $2 paid for them by agents and would readily sell at an advance, as well as representations that the extinguishers would easily put out all kinds of fires. The article was made by a secret process. Held that, in such case, the efficiency of the extinguisher was in issue, independent of its bearing on its value and salability, though obviously affect-

ing those questions; hence evidence that the extinguisher was practicable and put out fires was admissible.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86.]

2. POST OFFICE ☞49—OFFENSES—SCHEMES TO DEFRAUD—EVIDENCE—ADMISSIBILITY.

In such case, as the essence of the criminal scheme was the intent to defraud, letters to defendants stating the efficacy of the extinguisher were properly admissible on the question of good faith.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86.]

3. POST OFFICE ☞49—TRIAL—EVIDENCE.

In such case, where the government introduced expert testimony that the extinguishers would only once in a while put out a fire well started, such letters cannot be excluded on the ground that the government conceded the extinguishers were efficacious for putting out incipient fires.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 84–86.]

4. CRIMINAL LAW ☞1170(1)—APPEAL—HARMLESS ERROR.

In such case, where the court informed defendants' counsel that the concession of the government was something that he could comment on in his reply to the jury, and the government's attorney in conceding that the extinguishers were efficacious as to incipient fires compared them to a bucket of water, the exclusion of evidence of such letters was prejudicial; the entire record not so plainly establishing defendants' guilt that it must be assumed they would have been convicted though the evidence was received.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3145, 3149–3152.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Josiah T. Hair and another were convicted for use of the mails in the execution of a scheme and artifice to defraud, and they bring error. Reversed and remanded.

Defendants (plaintiffs in error) were each sentenced to three months' imprisonment and to pay a fine of $2,500 upon conviction for use of the mails in execution of an alleged scheme and artifice to defraud. They were the owners and managers of a corporation known as Liberty Association, having its principal office at Chicago, engaged in making and selling fire extinguishing appliances, mainly dry chemical fire extinguishers. Defendant Josiah T. Hair, about 1899, devised a dry chemical fire extinguisher, and began its manufacture and sale. About 1903 defendant Burchard Hair, his son, became interested with him. They produced a dry chemical compound in powder form, about three pounds of which, placed in a long metal tube, constituted the dry extinguisher, to be hung or placed at convenient places in buildings, and in case of fire to be used by pulling the cap from the tube and throwing the powder as nearly as possible at the seat of the fire. The product had merit not only for putting out the fires, but in preserving indefinitely its powder form—caking or solidifying in the tube manifestly destroying its further usefulness. Making and selling such product, and handling other fire extinguishing appliances, continued to be the business of the corporation, the sale of the product being made mainly through canvassers and agents.

In 1909 defendants conceived the plan of marketing the product through establishing agencies; the agent to purchase and pay for an agreed quantity of the tubes at $2 per tube, and to sell them at $3. Advertisements were inserted in newspapers stating in substance that agents were wanted in an established business to handle an easy selling article, and that a good salary would be paid, together with commissions and expenses, and stating that the applicant would have to invest from $500 to $1,000. In this manner, and

through solicitors who were sent out to place agencies, during the years 1909, and 1910, about 80 of such agents were secured, most of whom paid to the company sums from $100 to $1,000 each, receiving goods to represent the amount so paid at agreed prices, and entering into contracts in writing with the defendants' company like those set out in the indictment and shown in evidence, the salient provisions of which are that the corporation engages the general sales agent to conduct the business of the corporation in the prescribed locality for the time fixed, at a stated monthly salary and 5 per cent. commission on sales in consideration of the agent's performance and fulfillment of his part of the agreement; the corporation to pay for rent of office, stationery, circulars, and the like; to instruct the agent in the merits and use of the dry extinguisher, and other materials and apparatus the corporation manufactures or deals in; to sell to agent the dry extinguishers at $24, cash per doz. and at expiration of term and fulfillment of the agreement to repurchase from agent at price charged, such as remain on his hands; the agent to devote all his time and efforts to the business, and to carry a stock of the extinguishers of not less than a stipulated amount at said price; to make weekly and monthly reports to the corporation; to make sales of an average stated monthly amount as the minimum of business to fulfill the agent's contract; corporation reserves right to cancel contract at end of six months if sales are below the minimum, and, in case of such cancellation, to repurchase stock on hand at prices charged; at end of each month agent shall deduct from money collected his own remuneration, commission, and authorized expenses, and remit balance to company, which shall replace stock sold by agent, and, in case the minimum business required shall not be sufficient to pay the expenses of the office and cost of replacing stock, the corporation will each month make good the deficiency. In the procurement of the contracts, and the payment of the money which was paid by the agents to the company, the mails were employed as stated in the indictment.

The alleged false and fraudulent representations of defendants are, briefly, that the corporation would employ the agent at a salary of from $75 to $150 per month and commissions and expenses; would make the intended victim sales manager for a specified territory; that the corporation would at any time repurchase from the agent any stock at the price he paid for same; that the extinguishers would readily sell at $3 each; and that at such price the agent could make the minimum sales required; that the agent would be paid by the company the agreed salary and expenses regardless of the amount of his sales; that the extinguishers would instantly destroy all kinds of fires, and were approved by the National Board of Fire Underwriters and chiefs— whereas, in fact, none of such representations were true. Further facts are stated in the opinion.

Amos W. Marston, of Chicago, Ill., for plaintiffs in error.

Charles F. Clyne and H. R. Harris, Jr., both of Chicago, Ill., for the United States.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). Various of the numerous assignments of error involve rulings of the court excluding from the evidence testimony of certain witnesses, and many admittedly genuine letters, all tending to establish the merit and the efficiency of these dry chemical extinguishers, and their capability of extinguishing fires of various kinds, and bearing on the state of mind of defendants in making the alleged fraudulent representations.

[1] The defendants were charged with falsely representing that the product was worth what the agents paid for it, viz. $2 per tube, and that it would readily sell at $3, and that it would easily extinguish all

kinds of fires however fierce and savage, when in fact the indictment charges the product was not worth to exceed $1 per tube and would not readily sell at $3 and would not put out fierce or savage fires. The article was made by a secret process, and even if the evidence revealed its ingredients, which it does not, its commercial value would not be determinable alone from the actual cost of such ingredients plus cost of manufacture. Its utility would be an important element bearing on its money value as a manufactured article. If useless and ineffective, it would doubtless be worth commercially less than the cost of the ingredients, since by thus compounding them into a useless product the original value of the ingredients would be impaired, if not wholly lost. If, on the other hand, the product was highly efficient, this fact would tend strongly to have an opposite effect on its money value. Evidence of efficiency was competent as bearing on the value, desirability, and salability of the product. Under this charge of fraudulently representing the product to be capable of instantly extinguishing all kinds of fires, however fierce and savage, at least one of the government's witnesses (Zieman) testified that in his experiments only once in a while could he put out a fire, and that he had complained that the powder would not work. The efficiency of the product to put out fires was an issue, independent of its bearing on the value and salability, on which evidence of witnesses as to their experience with it, and as to the character and kind of fires which it would extinguish, was clearly admissible.

[2, 3] Of the essence of any such alleged criminal scheme or artifice is the intent to defraud. If this be wanting, there is no such scheme or artifice, and no crime. Letters of the nature of those which were excluded, coming to the attention of the defendants before the time of the alleged offense, and reasonably capable of inducing or confirming or strengthening faith in the excellence and efficiency of the product, are admissible under such charge, on the question whether the representations charged and proved were made in good faith or with intent to defraud. Hibbard v. United States, 172 Fed. 66, 96 C. C. A. 554, 18 Ann. Cas. 1040; Harrison v. United States, 200 Fed. 662, 119 C. C. A. 78; Gould et al. v. United States, 209 Fed. 730, 126 C. C. A. 454; Patterson v. United States, 222 Fed. 599, 138 C. C. A. 123. Indeed, the admissibility of evidence such as that excluded is not seriously controverted on behalf of the government, but it is earnestly insisted that on the trial the government conceded that these dry extinguishers were efficient to put out fires, and that therefore there was no error in ruling out this evidence; and that in any event in view of such concession by the government, together with the fact that some evidence was admitted to like effect as that which was excluded, no possible harm came to defendants through the exclusion.

Charged with willfully and fraudulently misrepresenting the efficiency and the value and salability of the product, and at least one witness for the government having testified in support of that charge, it was the right of the defendants to have their evidence in exculpation fully adduced before the jury, and they should not have been required

in lieu of such right to accept the concession of the district attorney on a proposition so material and important to the defense.

[4] This is particularly true in view of the fact that the concession of the government does not appear to be as broad as the charge or the evidence thereunder. The indictment alleged a deliberate and fraudulent misrepresentation as to efficiency and value and salability, and charged that the product "would not instantly destroy by scientifically smothering all kinds of fires no matter how fierce or savage, and that the said fire extinguishers were not capable of extinguishing fierce and savage fires." The concession of the government was not formal, but appeared in various colloquies between counsel themselves or with the court, occurring at different times during the long trial. In most instances the concession is qualified by the word "incipient," and thus limited the conceded efficiency of the extinguisher to putting out incipient fires. The concession did not go to the extent of its putting out "all kinds of fires no matter how fierce or savage." On the argument to the jury counsel for the government undertook to minimize the concession by saying "the government admits that these extinguishers are good for incipient fires just as a bucket of water would be to smother flames," and on objection by defendants' counsel the court said:

"This is merely something that you can comment on in your reply. * * * It has been admitted by the government that this is a perfectly efficient powder for putting out incipient fires, and I have already instructed the jury."

If the concession was such that counsel could properly argue that the extinguisher had no greater merit than a bucket of water in putting out fires, evidence of capability far beyond that was proper and material, and its exclusion erroneous. This indefiniteness and uncertainty of the extent of the concession but emphasizes the impropriety of excluding the offered evidence.

Nor can we conclude that through the exclusion of the evidence no substantial harm came to defendants. Where from examination of the entire record the guilt of the accused is so plainly apparent that, even with the rejected evidence admitted, the result could not have been otherwise, the error in rejecting the evidence might be considered harmless, and not sufficient ground for reversal. But such examination of the record here does not satisfy us that the guilt of the defendants is so plainly apparent that, had the improperly excluded evidence been before the jury, a different result might not have been reached.

For the error indicated, the judgment is reversed, and the cause remanded, with direction to grant a new trial.