### KNUDSEN v. DOMESTIC UTILITIES MFG. CO. et al.

(Circuit Court of Appeals, Ninth Circuit. April 5, 1920. Rehearing Denied May 17, 1920.)

No. 3235.

1. Fraud ⊙⇒12—Promise without intent to perform actionable.

It is the general rule, and the rule in California, that a promise made with the intention not to perform it will support an action of deceit.

2. Fraud ⊙⇒54—Evidence of like frauds admissible to show intent.

In an action for fraud, great latitude is allowed in the introduction of evidence, and evidence of like frauds is permissible to prove fraudulent intent.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Action at law by Elizabeth Knudsen against the Domestic Utilities Manufacturing Company, Edwin R. Crooker, Louise E. Crooker, W. P. Ellis, and F. W. Sterling. Judgment for defendants, and plaintiff brings error. Reversed.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff in error entered into a contract with the Domestic Utilities Manufacturing Company, a corporation, hereinafter called "the Company," wherein, in consideration of $5,000 paid to the Company by the plaintiff, the latter sold to her as its agent 1,667 "vacuum clothes washers." The contract provided that the plaintiff might sell said washers at retail at a price not less than $3.50 for each, and it gave her the right to make as many sales at wholesale as she could successfully solicit, upon contracts in every way identical with the contract between her and the Company, and it provided that those contracts might be for 50 washers for $150, 167 for $500, 334 for $1,000, 834 for $2,500, or 1,667 for $5,000, and that upon each sale of lots as so specified the plaintiff should receive commissions from the Company of approximately two-thirds of the said specified sums. The contract contained very numerous provisions which, for the purposes of this case need not be alluded to. It was executed on July 7, 1911.

On January 26, 1915, the plaintiff brought her action in the court below, setting up the execution of the contract, alleging that she entered upon the performance thereof, whereby she was put to large outlay and expense in traveling and otherwise establishing places for the sale of the Company's goods in various cities throughout the United States, spending large sums of money in so doing; that she paid to the Company large sums of money for a large number of clothes washers, and directed the Company to ship the same to various persons at various points, but that the washers were never delivered, and the Company failed and refused to perform its contract with the plaintiff, and refused to deliver to her or to ship to her order the 1,667 vacuum washers so bought by her in her contract; that the Company held back and refused and neglected to ship to her order, as required by the terms of the contract, more than 30,000 of vacuum clothes washers which she had sold; that she sold 36,000 of said washers, and the Company never delivered more than 4,000 thereof; that in order to carry out her contracts with customers she was compelled to and did establish manufactories and manufactured washers: and that in fact the Company was not endeavoring to manufacture washers to comply with its contract with her and other contract holders of the same class.

The complaint further alleged that the Company and the individual defendants conspired to cheat and swindle the plaintiff by their paper circulars and booklets and other literature, wherein they represented, and plaintiff was led to believe, that the Company was actually engaged in the manufacture and sale at wholesale and retail of vacuum clothes washers, etc., to its agents and their customers; that such statements and representations and pretenses were false, were sham and deceit, and worked a fraud upon the plaintiff: that the Company was not and never had been actually or really manufacturing for sale or selling, either at wholesale or retail, said washers and other articles, except that it manufactured a few for the mere purpose of show, and not for delivery to buyers or its agents; that the Company has in all manufactured not more than 500,000 washers, whereas it has sold 10,000,000 thereof under the contracts made by it; and that the Company has manufactured washers only as a pretense and as a blind to screen its real business, which was to sell its contracts, such as the contract with the plaintiff, and to induce the original purchasers of said contracts to sell other contracts like them, and subcontracts as provided therein, and to reap a portion of the purchase price of each of said resale contracts for the enrichment of the Company without any intention on its part to deliver the washers ordered by said contracts or subcontracts, and to that purpose the defendants sought by every means to encourage the sale of contracts, and to discourage in every way possible the actual sale of washers; and the plaintiff alleged that she had purchased from the Company and paid to it $13,003, the full price of 12,337 vacuum clothes washers which she had sold to certain named persons in lots ranging from 50 to 1,667, and that the Company received the money, but refused and failed to deliver the washers, or any thereof; that the plaintiff has demanded the repayment of said several sums of money, but the Company has refused and still refuses to repay the same; that the plaintiff established factories with the Company's consent

for the manufacture of washers, and that she manufactured the same until wrongfully forbidden to do so by the Company.

The plaintiff further alleged that at the time when she entered into the contract the defendants Crooker and Ellis represented to her that the Company owned patent rights in Canada and other foreign countries giving them the right to manufacture and sell therein the vacuum washers; that the plaintiff believed those statements and relied thereon, and entered into the contract with the intention of selling the washers in some of said foreign countries; that said representations were false, and defendant knew them to be false when they were made; that they were made with intent to deceive plaintiff and induce her to pay her money to the Company; that the plaintiff did not discover that said statements were false until about March, 1912, after she had paid out and expended large sums of money in establishing business in Toronto, Canada, prior to which she had received from the Company permission to manufacture and sell said washers in Canada; that she learned in 1912 that the Company had secured no patents or patent rights in Canada, and had no right to manufacture or sell said washers therein, and that the plaintiff was not permitted by the laws of Canada to import to Canada for sale any of said washers, whereby she suffered large financial loss. The plaintiff set forth in detail the items of her damages, amounting in all to $75,407.52.

When the case came on for trial, the defendants' attorneys demanded that the plaintiff be required to elect whether she would proceed upon her action for damages for the breach of the contract or upon her action for fraud. Plaintiff's counsel thereupon stated that he sought recovery in fraud. The court then said, "Then the damages you want to recover will be under section 3333 of the Civil Code?" And the plaintiff's counsel answered, "Yes," and added, "I maintain that it never was anything but a suit in fraud, and we stand upon the fraud." Upon the conclusion of the plaintiff's testimony the court entered a nonsuit as to the defendants Sterling and Ellis and Louise E. Crooker, and at the close of all the testimony directed the jury to return a verdict for the other defendants.

Robert L. Hubbard, of Los Angeles, Cal., for plaintiff in error.

Davis, Kemp & Post, R. W. Kemp, and Kemp & Clewett, all of Los Angeles, Cal., for defendants in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The principal question here presented is whether the court below erred in directing the jury to return a verdict for the defendants. The complaint contains allegations which would support recovery of damages for breach of contract; but, that phase of the cause of action having been eliminated by the election of the plaintiff to stand upon her allegations of fraud, the question which remains is whether the complaint states a cause of action for deceit. For the defendants it is contended that the allegations of fraud are fatally defective for failure to set out in detail the nature of the representations made in the Company's circulars, wherein they were false, and how the plaintiff was deceived thereby.

[1] The complaint contains, however, other allegations of deceit. One of them is that the Company, at the time of making the contract with the plaintiff, intended not to perform the same and had no intention to deliver the washers under the contracts. It is generally held that a promise made with the intention not to perform it will support an action of deceit (20 Cyc. 22), and this is the rule in the state of

California (Civil Code, § 1572; Cockrill v. Hall, 65 Cal. 326, 4 Pac. 33; Newman v. Smith, 77 Cal. 22, 18 Pac. 791; Brison v. Brison, 75 Cal. 525, 17 Pac. 689, 7 Am. St. Rep. 189; Flood v. Templeton, 152 Cal. 148, 92 Pac. 78, 13 L. R. A. [N. S.] 579; Rheingans v. Smith, 161 Cal. 362, 119 Pac. 494, Ann. Cas. 1913B, 1140). Mere failure of performance is not evidence of an intention not to perform at the inception of a contract. But here there is much more than proof of a failure to perform. The evidence strongly indicates that there was no intention whatever to perform. The scheme of the company was obviously fraudulent. It contemplated selling a contract to an agent, who was given the right to sell like contracts to 50 others, and each of those 50 had the right to sell to as many more, and so on. In Lupton v. Domestic Utilities Mfg. Co., 173 Cal. 416, 160 Pac. 242, the court said that the scheme of the company which is defendant herein involved fraud in its every aspect, "contemplating an endless chain of victims, each one in turn to recoup his own loss and make a profit by victimizing others." There is no obstacle to the plaintiff's recovery in the fact that she made no rescission of her contract. There was no occasion to make rescission. She received nothing that she ought to return. There was evidence she had performed her contract to the best of her ability and that the defendant corporation itself canceled her contract.

The court below, in allowing the motion for an instructed verdict, was of the opinion that the plaintiff's allegation that the defendant corporation was not engaged in manufacturing washers was immaterial, for the reason that the defendants permitted her to manufacture enough washers to supply all of her customers, and as to the allegation that the defendants did not want to sell washers, but wanted to sell agencies, the court observed that the plaintiff entered into the contract with knowledge of that fact and proceeded to sell contracts to others, thereby doing the very thing that she condemned the corporation for doing. Said the court:

"Every dollar of damage that she claims in this case, that was figured up by her, was lost in doing the very thing she condemns this company for."

The court concluded that the plaintiff was in pari delicto and could not recover, citing Hays v. Windsor, 130 Cal. 234, 62 Pac. 397, where it was said:

"The court * * * will not enforce a contract founded on the mutual turpitude of the parties to it. And for the same reason, if the contract has been executed, the court will not aid either party to escape its consequences."

The court below drew the conclusion that the plaintiff was in pari delicto with the Company from the fact that before she entered into the contract E. R. Crooker advised her to bend her efforts towards the selling of the contracts, saying, "There is where the big money is made." We are unable to agree that by that remark the plaintiff was given notice that the Company was engaged in a fraudulent scheme. The remark was doubtless true. But it conveyed no intimation that the Company did not intend to have its manufacturing department keep pace with its selling department, or that it contemplated carrying

on a business in which it would be impossible to deliver washers to agents as fast as the agents acquired contracts to sell the same. According to the record the plaintiff apparently acted throughout in good faith. During the two years or more in which she acted as agent, she was constantly importuning the Company to deliver washers in accordance with the sales she made, and in accordance with its promises. In these efforts she was unsuccessful, and she was compelled at last to resort to manufacturing washers on her own account, on all of which she paid royalties to the Company. The fact that the Company did manufacture 500,000 washers does not disprove the allegation that its intention was not to manufacture washers but to sell contracts. The washers so made would not fill more than 20 per cent. of the contracts which, according to the plaintiff's testimony, were sold by the agents.

[2] As the case must be remanded for a new trial, we deem it proper to say that in our opinion the court below was in error in excluding evidence proffered by the plaintiff to show that the defendants had committed like frauds upon others. The court ruled:

"The question is: Did they defraud Miss Knudsen? That is the question we are trying. Did they defraud her? You cannot get judgment for her by reason of the fact that they defrauded other people, or didn't keep any books."

In determining the existence of fraud, "'great latitude is allowed in the introduction of evidence." 20 Cyc. 110. And evidence of like frauds is permissible to prove fraudulent intent. 12 R. C. L. 435; Lincoln v. Claflin, 7 Wall. 132, 19 L. Ed. 106; Tooker v. Alston, 159 Fed. 599, 86 C. C. A. 425, 16 L. R. A. (N. S.) 818; Fowle v. Child, 164 Mass. 210, 41 N. E. 291, 49 Am. St. Rep. 451; Hobbs v. Boatright, 195 Mo. 693, 93 S. W. 934, 5 L. R. A. (N. S.) 906, 113 Am. St. Rep. 709; Robertson v. Halton, 156 N. C. 215, 72 S. E. 316, 37 L. R. A. (N. S.) 298; Eastman v. Premo, 49 Vt. 355, 24 Am. Rep. 142.

The judgment is reversed, and the cause is remanded for a new trial.