## McLENDON v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. July 8, 1926.)

No. 4561.

**1. Post office ⊂⇒49.**

In prosecution under Pen. Code, § 215 (Comp. St. § 10385), for using mails to defraud, evidence that defendant had used name of another in carrying on business after former issuance of fraud order against him *held* properly admitted.

**2. Post office ⊂⇒49.**

In prosecution under Pen. Code, § 215 (Comp. St. § 10385), for using mails to defraud, evidence that government had issued fraud orders against defendant under several different names *held* inadmissible except as relating to particular offense.

**3. Post office ⊂⇒49.**

In prosecution under Pen. Code, § 215 (Comp. St. § 10385), for using mails to defraud, evidence as to false representations made prior to representation on which prosecution was based *held* admissible as showing existence of general scheme.

**4. Post office ⊂⇒49.**

In prosecution under Pen. Code, § 215 (Comp. St. § 10385), for using mails to defraud, evidence of false representation, made after those on which prosecution was based, *held* inadmissible.

**5. Post office ⊂⇒49.**

Records of state penitentiary, showing defendant's confinement therein at time when circular alleged to have used mails to defraud in violation of Pen. Code, § 215 (Comp. St. § 10385), was sent, *held* improperly admitted.

**6. Witnesses ⊂⇒337(5).**

Government, after defendant in prosecution under Pen. Code, § 215 (Comp. St. § 10385), offers himself as witness, could properly show he had been convicted of a felony, for purpose of discrediting testimony.

**7. Criminal law ⊂⇒361(2).**

After admission of confinement in penitentiary is drawn from defendant, he is entitled to offer such explanation of his conviction as he desires.

**8. Post office ⊂⇒50.**

Instruction, in prosecution for using mails to defraud, that, if defendant had in good faith offered to refund money to purchaser he should be acquitted, *held* properly refused under evidence.

**9. Post office ⬤⇒50.**

In prosecution for using mails to defraud instruction that defendant had right to use extravagance in describing dogs *held* properly refused, where misrepresentations were not such as to which opinions might differ.

**10. Criminal law ⬤⇒784(1).**

Instruction that defendant should be acquitted if evidence was equally consistent with innocence as guilt should be given, where evidence is wholly *circumstantial* or is both circumstantial and direct.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

T. E. McLendon was convicted of using the mails to defraud, and he brings error. Reversed and remanded.

D. B. Puryear, of Memphis, Tenn. (T. J. Walsh and W. R. Harrison, both of Memphis, Tenn., on the brief), for plaintiff in error.

W. H. Fisher, Asst. U. S. Atty., of Memphis, Tenn. (S. E. Murray, U. S. Atty, of Memphis, Tenn, on the brief), for the United States.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. T. E. McLendon and Keith Tillman were charged under section 215 of the Penal Code (Comp. St. § 10385) with using the mails in the execution of a scheme to defraud. The act alleged was the mailing of a circular containing false representations as to the pedigree and registry of four dogs. Tillman entered a plea of nolo contendere, and McLendon was convicted, fined $1,000, and sentenced to the penitentiary for three years and a half. Numerous questions are argued in his behalf as presenting error. We shall discuss only those which will probably be raised on another trial.

[1, 2] The government introduced evidence showing that the post office department denied defendant the use of the mails prior to the sending of the circular, or, as stated by the witnesses, issued a fraud order against him, after which he successively used the names of Tillman and others in carrying on his business, and that the government then issued fraud orders against those names. It is insisted, under Harrison v. United States, 200 F. 662, 119 C. C. A. 78 (6 C. C. A.), that the admission of this evidence was error because of its tendency to disparage defendant with the jury. If its effect was so

restricted, it was clearly inadmissible, but a different question was presented if the showing of the orders was reasonably necessary to prove some element of the offense. In the latter case the incidental effect would yield to the larger purpose. The indictment charged that Tillman's name was used in executing the scheme because defendant had been denied the use of the mails. Evidence of that use and of the reason therefor was indispensable to proof of defendant's part in the scheme as well as his use of the mails in executing it. The other orders were not related to this offense and should have been excluded.

[3, 4] Other false representations, not connected with these dogs and with which Woodward, to whom the circular was sent, was not concerned, were admitted in evidence. It is claimed that they had no bearing on the offense alleged, and that they amounted to nothing more than proof of other offenses. Some of them were made prior to and others after the mailing of the circular to Woodward. Those that occurred prior thereto were competent to show the existence of the general scheme of which the sending of the circular was a part as also the intent in mailing it. McLendon v. United States (C. C. A.) 2 F.(2d) 660. Those occurring after the mailing of it were not competent for either purpose, as they could and might have been wholly disassociated from the scheme in question or the gravamen of the offense charged.

[5-7] The records of the state penitentiary showing defendant's confinement therein when the circular was sent were made a part of the government's evidence in chief. They were admitted on the theory that defendant, being absent from his place of business, made certain representations in the circular of which he had no knowledge. In our view they signified nothing in that respect, their sole effect being to discredit the defendant with the jury. This was not absolved by the later discovery of the same fact on cross-examination of the defendant. He might not have taken the witness stand had the evidence not been introduced by the government in chief. After it was introduced, there was no reason for his refusing to testify or attempting to avoid the injury that would result from an admission of his former conviction. It was proper for the government, after he offered himself as a witness, to show that he had been convicted of a felony, with the view of discrediting his testimony; but, until he had testified, the evidence was not

admissible. It may be added that, after the admission was drawn from him, he ought to have been permitted to offer such explanation of his conviction as he cared to make, without detailing the facts and circumstances connected therewith.

[8, 9] Among the instructions requested was one to the effect that, if the jury believed that defendant offered in good faith to refund to the purchaser the money paid for the dogs, if he was dissatisfied with them, and the offer would have been carried out, the defendant should be acquitted. Depending upon the circumstances of the case, including the feasibility of a voluntary or enforced fulfillment, there are conceivable cases where an offer of this character, if made in good faith, would negative an intent to defraud. The facts in this case do not so impress the offer. It was received in evidence as tending to show the absence of fraudulent intent; but the developments of the case did not authorize an instruction specifically referring to it as bearing upon that issue. Nor was the court obliged to charge (though he might have done so) touching the right of defendant to "puff" his dogs or use extravagantly laudatory language in describing them. The misrepresentations did not pertain to matters about which there could be a difference of opinion; they related to facts about which there could be no mistake.

[10] The court was requested to instruct the jury to acquit defendant if they believed the transaction complained of was as consistent with innocence as guilt. That idea in some form should be included in the charge where the evidence is wholly circumstantial or is both circumstantial and direct. It was not embodied in the charge in the Hendrey Case (6 C. C. A.) 233 F. 5, 147 C. C. A. 75, relied on by defendant, but was, we think, included in the charge here. The court was careful to say more than once that defendant was entitled to every presumption of innocence respecting the various elements of the offense which the government was required to prove beyond a reasonable doubt. It would have been better, however, to have said in definite terms that the accused should not be convicted if in the opinion of the jury the facts in evidence were as consistent with innocence as guilt, or unless the evidence as a whole excluded every other reasonable hypothesis but guilt.

Other assignments of error relied on are unsustainable, but, for the reasons stated, the judgment is reversed and the cause remanded.