## McCAFFREY v. ELLIOTT et al. *

### In re MIAMI SIGN CO.

### No. 6015.

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1931.

*Rehearing denied April 18, 1931.

S. J. Barco and James M. Carson, both of Miami, Fla., for appellant.

Paul D. McGarry, John C. Sullivan, John J. Lindsey, and J. N. Morris, all of Miami, Fla. (Stanley C. Myers and Morris & Myers, all of Miami, Fla., on the brief), for appellees.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, as trustee in bankruptcy of the Miami Sign Company, a company engaged in the outdoor advertising business, formerly the E. B. Elliott Advertising Company, brought suit against the following individuals and corporations to set aside certain transactions between the bankrupt and the defendants and to recover assets alleged to have been transferred in fraud of the creditors, to wit: E. B. Elliott, formerly president of the bankrupt, M. R. Elliott, his wife and a director and secretary, A. C. Lewis and I. H. Rown, both directors, Mike McCormick, Walter McElroy, and W. C. Haag, stockholders, the E. B. Elliott Company, formerly the Florida Outdoor Advertising Company, the Claude Neon Southern Corporation, formerly the Elliott-Claude Neon Lights, Inc., the Elliott Properties, Inc., and the Third National Bank of Miami.

The bill is inartificially drawn, and the pleadings as a whole are lengthy and diffuse. However, the bill, with appropriate allegations of intent to defraud creditors, sufficiently charges that E. B. Elliott, while president of the bankrupt, acquired from it while it was insolvent, and without adequate consideration, a yacht named the Alwilda and two certain lots of ground in Coral Cables, Fla.; that the yacht was subsequently transferred by E. B. Elliott to the Elliott Properties, Inc., a corporation entirely controlled by him, and the two lots of ground were

transferred to his wife. The bill also charges the transfer by the bankrupt of certain assets, principally its entire electric sign business, to the Elliott-Claude Neon Lights, Inc., for 1,200 shares of stock, which were in turn distributed to the individuals named as defendants, in various proportions, without consideration. As to the bank, it is charged that it received a preference by the pledge of certain shares of stock belonging to the bankrupt. Other allegations, while pertinent, need not be referred to. The bill prays for general relief in addition to other relief asked for, and the prayer is broad enough to justify a decree for the return of the property transferred or for an accounting from the various defendants.

The District Court, as appears from an opinion in the record, announced the rule that business transactions are presumably honest, and fraud is not to be presumed, but must be specifically proven, and held that plaintiff had failed to sustain the burden of showing the insolvency of the bankrupt at the various times the transactions complained of occurred, and to prove fraud. The bill was dismissed. The court also declined to pass upon some of the issues presented upon the theory that they could be taken up before the referee.

■ Generally, where a transaction is sought to be set aside on the ground of fraud, the rule is as stated by the District Court, but, while an officer or director of a corporation may deal with it the same as a third person, provided the transaction is in entire good faith, the rule as to proof of fraud is different. Such transactions are to be viewed with suspicion and scrutinized with care, and the burden is on the officer to show good faith. Handley v. Stutz, 139 U. S. 427, 11 S. Ct. 530, 35 L. Ed. 227; Brown v. Grand Rapids Parlor Furniture Co. (C. C. A.) 58 F. 286, 22 L. R. A. 817; American Exch. Nat. Bank v. Ward (C. C. A.) 111 F. 782, 55 L. R. A. 356; Howland v. Corn (C. C. A.) 232 F. 35.

In the view we take of the case, it is unnecessary to review the evidence extensively. The schedules, filed in September, 1929, show the bankrupt to be hopelessly insolvent, the liabilities exceeding the listed assets by over $74,000. The testimony of E. B. Elliott, given before the referee and introduced on the hearing in the District Court, was to the effect that the corporation was insolvent in 1928 and in about the same condition throughout 1926. The testimony of an expert accountant was that he could not satisfactorily take off a trial balance from the books owing to their condition and the manner in which they were kept, and that, while the assets had appeared to have increased about $100,000, the liabilities had increased in the same proportion. There is no doubt that at the time of the transactions complained of the bankrupt owed some $60,000 to two creditors whose claims were not settled, but were reduced to judgment, and later were proved in the bankruptcy proceedings. It is plain that a prima facie showing of insolvency was made.

■ As to the sale of the yacht Alwilda, there is testimony tending to show that the bankrupt paid $7,000 for her. She was sunk in the Miami storm of September, 1926, and while in that condition she was sold to E. B. Elliott. In answer to an interrogatory, he stated that he paid $1,000 for the vessel. The burden was on Elliott to prove adequate consideration and fair dealing in this transaction. The mere fact that she had foundered would not support the argument that $1,000 was full value, if that amount was really paid, as it is possible that she might have been salvaged at slight expense, with very little depreciation in value.

With regard to the two lots in Coral Gables, the evidence tends to show that the original consideration was $24,000. The transfer from Elliott to his wife was for $10 and other valuable considerations. In answer to an interrogatory, E. B. Elliott stated that the consideration for the conveyance of this property was his assumption and subsequent payment of delinquent taxes, certain moneys which he had expended in the repair and improvement of the property, the assumption of a mortgage incumbering the lands and improvements and advances made by him in connection therewith, but no amounts were given as to any of these expenditures. It is apparent that E. B. Elliott's testimony as to this transaction was evasive and of no probative force. There was nothing else to show the transaction was bona fide.

■ With regard to the transfer of certain assets to the Elliott-Claude Neon Lights, Inc., there is no doubt that the bankrupt paid the expenses of organizing the new corporation, amounting to some $12,000, and that the 1,200 shares of stock received was distributed to the individuals named defendants in various proportions, E. B. Elliott receiving 906 shares and his wife 153. If the corporation was insolvent at that time, the distribution of this stock, representing the major portion

the most valuable part of its assets, was clearly a fraud upon its creditors. The burden upon those receiving the stock to show good faith and fair consideration in its acquisition has not been met.

There is evidence in the record tending to show the domination on the part of E. B. Elliott of all the corporations. Notice of directors' meetings were usually waived, and the minutes are more or less unsatisfactory. There is evidence tending to support the allegations of the bill tracing the assets of the bankrupt through the intermediary corporations to those succeeding. There is also evidence tending to show that the Elliott Properties, Inc., was a dummy corporation organized for the benefit of E. B. Elliott by his attorney and two of the latter's employees.

On the whole, a prima facie case is made which, in the absence of proof to the contrary, would warrant a decree in favor of appellant.

Error is assigned to the sustaining of objections to various interrogatories and to the exclusion of certain testimony. We do not pass these as being without merit, but will not consider them, as it is sufficient to say that, where fraud is charged, the widest latitude should be allowed in the admission of proof. As the District Court was in error in putting the burden on plaintiff of showing fraud by strict proof, in the interests of justice there should be a new trial, with leave to all parties to amend their pleadings within reasonable limits and to introduce additional proof. It was also the duty of the court to pass upon all of the issues presented. The referee would be without jurisdiction to pass upon issues raised in a plenary suit. Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897.

Reversed and remanded for further proceedings not inconsistent with this opinion.