## WORTHINGTON v. UNITED STATES.
### No. 4720.

Circuit Court of Appeals, Seventh Circuit.
Feb. 14, 1933.
Rehearing Denied June 10, 1933.

Walter W. Duft, of Chicago, Ill., for appellant.

George E. Q. Johnson, U. S. Atty., and Francis J. Kennedy, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Many errors are assigned by appellant, which we will consider under separate headings.

### The Indictment.

The sufficiency of the indictment is assailed because (a) none of the first five counts sets forth a scheme to defraud with sufficient clarity to inform appellant of the charges which he is to meet; (b) each count contains representations so different from the other that it can not be said that said representations were made pursuant to the same scheme to defraud, and therefore each count of the indictment is bad for duplicity.

It is stated in the rather lengthy first count (the allegations of which are appropriately adopted in the second, third, fourth, and fifth counts) that appellant and Freiburger "devised a scheme and artifice to defraud, and to obtain money and property by means of false pretenses, representations and promises from a class of persons then resident within the United States, to wit, those persons desirous of making profitable investments in real estate, lot contracts and judgment notes, hereinafter called persons intended to be defrauded, all of whom, by

reason of their great number and from a lack of information on the part of the grand jurors are not susceptible of being separately named in this indictment, but who included among their number the following: * * *" (Thereafter follows the names of five persons whose addresses are given.) The indictment continues: "that the said scheme and artifice to defraud, and for the purpose of obtaining money by means of false pretenses, representations and promises was substantially as follows, to wit: * * *." Then follows a statement of the transactions whereby the victims were induced to part with their money and to invest the same in certain real estate ventures such as the Irrigated Farms Corporation, the Sheridan Shore Highland Subdivision, and the Moeller Sellers Development Company, a fig farm development enterprise in Arizona.

It was alleged that the fraud was consummated by having the said Freiburger represent that she "had no interest or relationship with the said Worthington" other than to see that the persons so intended to be defrauded made money through investments with appellant, and the said Freiburger further represented that she had made enormous profits out of her investments with appellant and that if the said victim delivered to said Worthington "large sums of money for investments" he would invest the same in the mentioned enterprises, which were in fact fraudulently conceived and without merit. Other acts and representations were attributed to appellant and his confederate whereby the victims were mistakenly led to believe that a down payment of part of the investment would yield such large returns that the balance of the purchase price would be paid out of the large profits arising out of the initial small down payment. While the allegations of the first count (repeated by adoption in the next four) might have, with propriety, more clearly negatived the verity of the representations and asserted more explicitly the unsoundness of the business enterprises into which appellant invested the victims' money, we feel the foregoing statement fairly describes the substance of the charge.

We can not say that the scheme to defraud set forth fails to inform the appellant with sufficient clarity to permit him to meet the proof of fraud and fraudulent intent which such charge necessitated. The scheme to defraud is, of course, an essential element of the offense charged. The gist of the offense, however, is the use of the mails, and it is therefore only essential to charge the scheme with such particularity as will enable the accused to know what he may be expected to meet on the trial. The details of such scheme need not be set forth with that particularity which would be required if it, rather than the use of the mails, were the gist of the offense. Redmond v. U. S. (C. C.A.) 8 F.(2d) 24; Cochran v. U. S. (C. C. A.) 41 F.(2d) 193; Cowl v. U. S. (C. C. A.) 35 F.(2d) 794; Mathews v. U. S. (C. C. A.) 15 F.(2d) 139; Havener v. U. S. (C. C. A.) 49 F.(2d) 196; Busch v. U. S. (C. C. A.) 52 F.(2d) 79; Horn v. U. S. (C. C. A.) 182 F. 721; Foster v. U. S. (C. C. A.) 178 F. 165; Brooks v. U. S. (C. C. A.) 146 F. 223; Savage v. U. S. (C. C. A.) 270 F. 14; Gardner v. U. S. (C. C. A.) 230 F. 575; McClendon v. U. S. (C. C. A.) 229 F. 523; Gould v. U. S. (C. C. A.) 209 F. 730.

*Duplicity.* From what has been said it is, we think, apparent that the indictment was not bad for duplicity. In determining whether a criminal charge, drawn under section 338, title 18, U. S. C. (18 USCA § 338), is bad for duplicity, it is necessary to differentiate between the scheme to defraud and the means adopted to effectuate the same. If the charge sets forth more than one scheme to defraud, it is duplicitous. If, however, there is but one general scheme to defraud and numerous means for effectuating the same, it is not bad for duplicity. Sconyers v. U. S., 54 F.(2d) 68 (C. C. A. 5); Sunderland v. U. S., 19 F.(2d) 202 (C. C. A. 8); Scheib v. U. S., 14 F.(2d) 75 (C. C. A. 7); McLendon v. U. S., 14 F.(2d) 12 (C. C. A. 5); Cowl v. U. S., 35 F.(2d) 794 (C. C. A. 8); Popham v. U. S., 11 F.(2d) 966 (C. C. A. 5); Silkworth v. U. S., 10 F.(2d) 711 (C. C. A. 2); Gourdain v. U. S., 154 F. 453 (C. C. A. 7).

A fair construction of the indictment convinces us that the grand jury merely charged one scheme to defraud and in addition described different ways of carrying it out.

The existence of several fraudulent ventures, into one of which an unsuspecting victim may be led, does not necessarily multiply the number of *schemes* to defraud. One possessed of a fraudulent scheme may set numerous traps into one of which he hopes and expects the unwary to walk. One victim may not be lured or tempted by a fig farm in Arizona and yet may fall for the prospective profits, captivatingly pictured, which might arise from the purchase, at a large discount, of an unsatisfied judgment. Still another unsuspecting victim may be in-

duced to purchase a land contract for the sale of a lot in a subdivision at a reduced price, when he would not buy the lot at half that price. In short, the fraudulent scheme of the entrapper may be a single one, yet means to accomplish the fraud may be many.

**Conspiracy.** The jury found one of the two defendants charged with conspiracy guilty, and the other not guilty. This would be fatal even to the one found guilty [Bartkus v. U. S., 21 F.(2d) 425, 427 (C. C. A. 7); Didenti v. U. S., 44 F.(2d) 537 (C. C. A. 9); Williams v. U. S., 282 F. 481 (C. C. A. 4); Grove v. U. S., 3 F.(2d) 965 (C. C. A. 4); Cofer v. U. S., 37 F.(2d) 677 (C. C. A. 5); U. S. v. Wray, 8 F.(2d) 429 (D. C.); Miller v. U. S., 277 F. 721 (C. C. A. 4); Feder v. U. S., 257 F. 694, 5 A. L. R. 370 (C. C. A. 2); Alkon v. U. S., 163 F. 810 (C. C. A. 1); Morrow v. U. S., 11 F.(2d) 256 (C. C. A. 8); Rosenthal v. U. S., 45 F.(2d) 1000, 78 A. L. R. 1415 (C. C. A. 8); U. S. v. Austin-Bagley Corporation, 31 F.(2d) 229 (C. C. A. 2)] were it not for the allegation that said two defendants conspired "together, and with each other, *and with divers other persons to the said grand jurors unknown.*" It takes the guilty action of at least two to effect a conspiracy.

However, the allegation to the effect that the two defendants conspired with other persons to the grand jury unknown, while affording the basis for determining what evidence is admissible and what evidence will support a conviction, when one of the two *named* defendants is found not guilty, is nevertheless an allegation which may be the subject of denial and refutation. In other words, a conspiracy may be established, even though one of the two parties named in the indictment as members thereof is not such a member, if the evidence shows that there are other persons in existence one or more of whom were parties to such conspiracy. But the evidence must show the existence of another person or persons who could take the place of the misnamed member of the conspiracy. The trouble with the record in the instant case is that the indictment named two persons, appellant and Freiburger, as the two conspirators. The jury found Freiburger was not a party to the conspiracy. The evidence fails to show any other person, to the grand jury unknown, who could take Freiburger's place and supply the necessary second party to the conspiracy.

The only person who could possibly have been a party to the conspiracy was one Meyers. He was, however, to the grand jurors known, and moreover, the evidence does not establish even a prima facie case of his participation in the alleged conspiracy.

Appellant's conviction on the conspiracy count, therefore, cannot be sustained.

Other assignments of error, save one, we pass with but brief mention as they may not again arise on a new trial which must be directed in view of the court's ruling rejecting certain evidence offered by appellant, which ruling we shall discuss presently.

We find no error in the trial court's refusal to grant appellant a bill of particulars; in calling Hamilton, an unwilling witness, as the court's witness; or in questioning witnesses produced by both sides. We fail to appreciate, and therefore reject, appellant's contention that he was compelled to testify against himself, or that it was erroneous to receive in evidence the books of the copartnership of Meyers & Worthington, of which appellant was a partner. The sufficiency of the evidence to support certain counts need not be considered in view of the possibility of other evidence being offered by one side or the other, on the new trial, clarifying the issues over which controversy exists.

### Rulings on Evidence.

Appellant particularly complains that he was prejudiced through the hysterical outbursts of certain witnesses who testified to losses through their dealings with him. While much of this was out of the presence of the jury, there was enough of it before the jury to raise a serious doubt as to prejudice resulting therefrom. The record shows that the court did all that could have been done to keep the witnesses within proper bounds and to neutralize any virus which their misconduct might have injected. It is conceivable, however, that the misconduct of witnesses might be such as to require reversal of a judgment notwithstanding the court's consistent action to avoid any prejudice. Whether in this case the misconduct of the witnesses had proceeded to such length, we need not decide, in view of the conclusion we reach respecting the rejection of certain evidence offered by appellant. In passing, it may be observed that where counsel for a party who misconducts himself on or off the witness stand in the presence of the jury, fails to take active steps to prevent outbursts by such party or his witness, a new trial will be more readily granted.

Appellant offered certain evidence, which was rejected by the court, to disprove the existence of the alleged scheme to defraud.

To better understand one of the means whereby his scheme to defraud was to be effected, it should be stated that appellant was engaged in the business of subdividing real estate additions and in selling lots on partial payments. To effect appellant's scheme to defraud, the government charged that the contracts which appellant secured for the sale of these lots were by him sold to his victims; that in some instances the contracts were with parties who had not made bona fide purchases of lots and in other instances the purchasers of the lots had made, or were making, no payments; that it was inferable that appellant knew, or had reason to believe, that no payments would be made; and that the purchasers of said land contracts would surely be heavy losers. It was contended by appellant that his real estate transactions were all made in good faith; that he planned subdivisions and sold lots—some on time; that he needed money to carry on his business; and that he sold and discounted the land contracts which evidenced the sale of the lots to purchasers who bought on time.

There was some evidence tending to show that some of these sales were not in good faith—not bona fide sales. At least one witness, a relative of appellant, was produced by the Government, who stated that he was not a purchaser of any lot from appellant. His land contract had been sold by appellant, however. It was to meet this situation that appellant endeavored to show, by witnesses who had, about the same time, purchased land contracts from him covering lands in the enterprises described in the indictment, the absence of any fraud or fraudulent scheme.

Counsel for appellant stated that he intended to bring many witnesses to show that appellant was "in a legitimate business rather than in a scheme to defraud." To use counsel's language, he offered to show "that witnesses on the stand will testify to the fact that they purchased contracts, which were drawn up in the office of Meyers & Worthington that purported to convey title held in property by Clyde L. Worthington; that the contracts were paid out in full either through the office of Meyers & Worthington or through the original contract purchaser himself. All for the purpose of showing the nature and character of the business engaged in by (Worthington). * * * (He) also offered to prove by these witnesses that the indictment charges that there were large encumbrances and tax sales against this property—I want to show that fact by this witness, that he got his money, that there was no lien as far as he knew of tax sales and mortgages" against the property described in the indictment. Another witness was then placed upon the stand to prove the same facts, and the objection to her testimony was sustained. The court then ruled: "Now, gentlemen, let me instruct you you need not call any more witnesses for the same purpose you called the last two."

Whether a scheme to defraud existed was determinable from appellant's various transactions with his customers but it was not, of course, capable of demonstration from a single transaction. Platting an addition or a subdivision and selling lots and then in turn selling the land contracts were transactions out of which some of the complaints in this case arose. The Government showed that the purchasers of these land contracts lost the money they put into the venture, or at least a large part of it. It also offered evidence from which the jury might have found that the contracts were worthless or at least worth much less than the amounts for which they were sold; that at least one contract was with a purchaser who was not a good faith buyer; that other contracts were of buyers who were in default and in all probability would never make another payment. From such evidence the Government argued that appellant had devised a scheme to defraud and that it was to be effectuated by his selling this worthless paper to innocent purchasers who paid sums known to appellant to be in excess of the true value of the paper.

It was to meet this position of the Government, thus briefly set forth, that appellant offered the testimony of witnesses who purchased other contracts and who received the full amounts due thereon. Such evidence, while not conclusively disproving the existence of a fraudulent scheme or purpose on appellant's part, would tend to refute the Government's evidence tending to establish a fraudulent scheme. Ordinarily, evidence of other transactions not connected with the one in question is not admissible to establish or disprove the fraud upon which an action for damages is predicated. But here we have a different issue. It was competent, as stated in Lefkowitz v. U. S., 273 F. 664, 666 (C. C. A. 2), for both parties to "show every part and parcel of such business, or the method of conducting it, calculated to shed light upon the intent and purpose of its managers." As was stated by this court in Hair v. U. S., 240 F. 333, 336 (C. C. A. 7):

"Of the essence of any such alleged criminal scheme or artifice is the intent to de-

fraud. If this be wanting, there is no such scheme or artifice, and no crime. Letters of the nature of those which were excluded, coming to the attention of the defendants before the time of the alleged offense, and reasonably capable of inducing or confirming or strengthening faith in the excellence and efficiency of the product, are admissible under such charge, on the question whether the representations charged and proved were made in good faith or with intent to defraud. * * * Charged with willfully and fraudulently misrepresenting the efficiency and the value and salability of the product, and at least one witness for the government having testified in support of that charge, it was the right of the defendants to have their evidence in exculpation fully adduced before the jury, and they should not have been required in lieu of such right to accept the concession of the district attorney on a proposition so material and important to the defense. * * * Nor can we conclude that through the exclusion of the evidence no substantial harm came to defendants. Where from examination of the entire record the guilt of the accused is so plainly apparent that, even with the rejected evidence admitted, the result could not have been otherwise, the error in rejecting the evidence might be considered harmless, and not sufficient ground for reversal. But such examination of the record here does not satisfy us that the guilt of the defendants is so plainly apparent that, had the improperly excluded evidence been before the jury, a different result might not have been reached. * * * "

In Wood v. United States, 41 U. S. (16 Pet.) 341, 358, 10 L. Ed. 987, the Supreme Court said:

"The question was one of fraudulent intent or not; and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment. Indeed, in no other way would it be practicable, in many cases, to establish such intent or motive, for the single act, taken by itself, may not be decisive either way; but when taken in connection with others of the like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty. * * * Cases of fraud present a still more stringent necessity for the application of the same principle; for

fraud, being essentially a matter of motive and intention, is often deducible only from a great variety of circumstances, no one of which is absolutely decisive; but all combined together may become almost irresistible as to the true nature and character of the transaction in controversy. * * * "

In a mail fraud action such as the one we are considering, a fraudulent scheme is an essential element of the crime. While Federal authority is exercised because of the use of the mails by the wrongdoer, the wrong —namely, the fraudulent scheme—is an essential and often is the only controverted issue involved. A fraudulent scheme presupposes a fraudulent intent. A purpose to defraud is necessary before there can be a fraudulent scheme. However, such fraudulent intent or purpose may be shown by contemporaneous acts and action that are tainted with questionable practices. But such practices may be explained by the accused. Likewise, inferences that arise therefrom may be rebutted. If it be shown that the land contracts sold to one purchaser were all bad and of little value and the purchasers made no payments thereon, from which evidence a fraudulent scheme might be inferred, may not the accused, to dispute the charge, show that others who, about the same time, purchased other land contracts covering lots in the same addition received every payment provided for in such contracts? The admissibility of such evidence is one thing. Its persuasiveness is quite a different matter. We are here merely interested in its admissibility.

Counsel for the Government has not attempted to meet this assignment of error. Nor has appellant fortified his position with a single authority. We have searched the authorities, however, and marginally cite the cases which hold directly and indirectly that such evidence is admissible.[1]

[1] *Proof of other fraudulent transactions admissible in certain instances:* United States v. Sprinkle .(C. C. A.) 57 F.(2d) 968; Roper v. U. S. (C. C. A.) 54 F. (2d) 845; Vause v. United States (C. C. A.) 53 F.(2d) 346; Butler v. United States (C. C. A.) 53 F.(2d) 809; United States v. Shurtleff (C. C. A.) 43 F.(2d) 944; Hatom v. United States (C. C. A.) 42 F.(2d) 40; Lewis v. United States (C. C. A.) 38 F.(2d) 406; Clapp v. United States (C. C. A.) 18 F.(2d) 906; United States v. Flemming (D. C ) 18 F. 907; Tincher v. United States (C. C. A.) 11 F.(2d) 18; McLendon v. United States (C. C. A.) 2 F.(2d) 660; Id. (C. C. A.) 13 F.(2d) 777; Seimer v. James Dickinson Farm Mtg. Co. (D. C.) 299 F. 651, 657; Knudsen v. Domestic Utilities Mfg. Co. (C. C. A.) 264 F. 470; Grant v. United States (C. C. A.) 268 F. 443; MacKnight v. United States (C. C. A.) 263 F. 832; Shea v. United States (C. C. A.) 236 F. 97; Id. (C. C. A.) 251 F. 440; Moffatt v. United States (C. C. A.) 232 F. 522; Scheinberg v. United States (C. C. A.) 213 F. 757, Ann. Cas. 1914D, 1258; Parker v. U. S. (C.

We are unable to say that the exclusion of such evidence was not prejudicial. The sharply controverted issue in the case was over the Government's charge that appellant devised a scheme to defraud. Proof of such charge necessarily consisted of appellant's transactions with the parties who claimed to be defrauded. To a considerable extent this proof was directed to the sale of contracts in additions or subdivisions which appellant sold. Prejudice, it seems, would follow from the exclusion of evidence which tended to show that the instances cited by the Government's witnesses were exceptions rather than the general rule, or did not fairly indicate the existence of a scheme to defraud.

The judgment is reversed, and the cause remanded for a new trial.

C. A.) 203 F. 950; Farmer v. U. S. (C. C. A.) 223 F. 903; Samuels v. United States (C. C. A.) 232 F. 536, Ann. Cas. 1917A, 711; McKelvey v. United States (C. C. A.) 241 F. 801; Le More v. United States (C. C. A.) 253 F. 887; Byron v. United States (C. C. A.) 259 F. 371; Stern v. United States (C. C. A.) 223 F. 762; O'Hara v. United States (C. C. A.) 129 F. 551; Wood v. United States, 41 U. S. (16 Pet.) 342, 358, 10 L. Ed. 987; United States v. De la Maza Arredondo, 6 Pet. 691, 8 L. Ed. 547; Lincoln v. Claflin, 7 Wall. 132, 19 L. Ed. 106; Butler v. Watkins, 13 Wall. 456, 20 L. Ed. 629; Packer v. United States (C. C. A.) 106 F. 906; Colt v. United States (C. C. A.) 190 F. 305.

Great latitude is allowed in introduction of evidence in fraud issue: McCaffrey v. Elliott (C. C. A.) 47 F.(2d) 72; Hyland v. Millers Nat. Ins. Co. (D. C.) 58 F.(2d) 1003; United States v. Mammoth Oil

Co. (C. C. A.) 14 F.(2d) 705, 733; Copper Process Co. v. Chicago Bonding Co. (C. C. A.) 262 F. 66, 8 A. L. R. 1477; Lefkowitz v. United States (C. C. A.) 273 F. 664; Knudsen v. Domestic Utilities Mfg. Co. (C. C. A.) 264 F. 470; Butler v. Watkins, 13 Wall. 456, 20 L. Ed. 629; 12 Ruling Case Law, 176; Gould v. United States (C. C. A.) 209 F. 730.

Evidence explaining transaction seemingly fraudulent is admissible: Kleeden v. United States (C. C. A.) 45 F.(2d) 87; Sacramento Suburban Fruit Lands Co. v. Loucks (C. C. A.) 36 F.(2d) 921; Hair v. United States (C. C. A.) 240 F. 333; Moses v. United States (C. C. A.) 221 F. 863; Fall v. United States (C. C. A.) 209 F. 547; Sparks v. United States (C. C. A.) 241 F. 777; Hibbard v. United States (C. C. A.) 172 F. 66, 18 Ann. Cas. 1040; Harrison v. United States (C. C. A.) 200 F. 662; Preeman v. United States (C. C. A.) 244 F. 1, 18.